STATE OF MISSOURI at the Relation.of CHARLES G. ROSS, Collector of the Revenue in and for the County of Pemiscot, and to the Use of DRAINAGE DISTRICT No. 6 of said County, Appellant, v. E. T. CRIDDLE, MARY E. CRIDDLE, J. H. KIESLER, Trustee, ST. LOUIS FARM MORTGAGE COMPANY, S. L. CANTLEY, Receiver of St. Louis Joint Land Bank, JAMES M. REEVES, Trustee, Bank of Caruthersville.—85 S. W. (2d) 77.

Court en Banc, June 5, 1935.*

---

*NOTE: Opinion filed at September Term, 1934, March 29, 1935; motion for rehearing filed; motion overruled at May Term, June 5, 1935. Companion case reported on page 829 of this volume.

*Sharon J. Pate, Chas. Claflin Allen, Jr.,* and *R. L. Ward* for appellant.

*Von Mayes, Morrell DeReign, C. G. Shepard* and *McKay & Peal* for respondent.

1232

HAYS, J.—This is a companion case to State ex rel. Ross, Collector, etc., appellant, v. General American Life Insurance Co., respondent, 336 Mo. 829, 85 S. W. (2d) 68, and was argued and submitted therewith. The appeal is from a judgment of the Circuit Court of Pemiscot County, and involves delinquent drainage taxes, alleged to be due Drainage District No. 6. This district was duly organized and incorporated in 1907 under the so-called County Court Act.

The case differs very slightly from the companion case, supra, in the nature of the record basis upon which it rests. In the present proceeding respondents' complaint is confined to a proceeding for cleaning out and enlarging ditches and for making a new outlet ditch. The proceeding was under the recleaning statutes treated of in the opinion rendered in the said companion case. The orders attacked in this proceeding are the first assessment and three supplementary assessments made therein. The record discloses that similar pro-

ceedings were concurrently conducted in Drainage Districts Nos. 3, 6, 8, 9 and Elk Chute with a view to recleaning ditches and providing an additional outlet for all, such outlet to be actually constructed by Elk Chute District and the cost thereof to be shared by the other districts named. At that time the main outlet ditch of District No. 9 was also the outlet of main ditch of District No. 8, and would be insufficient to accommodate the flow of water from these two districts when they should be cleaned out and enlarged as contemplated. It appears also that District No. 8 paid part of the original cost of constructing the outlet drainage ditch of District No. 6 which is also the outlet for District No. 9; that the right-of-way for the new work to be done in the securing of an adequate outlet for Drainage Districts Nos. 6, 8 and 9 was provided in the plan of reclamation by said Elk Chute District, wherefore the county court found it was not necessary to appoint viewers to serve with the engineer to determine damages incident to the new outlet for all the districts, as such viewers were appointed in the Elk Chute proceeding wherein the entire damages would be assessed; that the Elk Chute District was willing to contract with Districts Nos. 6, 8 and 9 for the cost of said outlet, and the county court therefore ordered in the several cases, under the authority conferred by Section 5628, Revised Statutes 1909, the Elk Chute District to construct the outlet and pay the damages incident thereto and ordered that the other districts mentioned share such cost and damages as found and reported by said viewers appointed in Elk Chute District, separate committees being appointed, however, to act in conjunction with the engineer in each of the other proceedings in allocating the cost of the common ditch. The orders of the county court as made in Districts Nos. 6 and 8 were identical in form and substance and bore the same dates.

This district, No. 6, was organized by a petition filed February 5, 1907, and as established the district embraces an area of about sixteen miles in length by an average of nine miles in width. The benefits were assessed at $542,564.50. Bonds were sold to finance said work, all of which and the assessments made have been paid off and discharged in full. "The trouble now before the court is," say the respondents, "the result of subsequent proceedings which resulted in additional taxes being levied against the land within said district in the sum of $775,028.72 over and above the benefits" so assessed in the establishment of the district, and arising out of the subsequent recleaning proceeding mentioned above.

This subsequent proceeding was, as stated above, begun on May 6, 1918, pursuant to petition filed and due notice given, in like manner and form, and proceeded throughout in the same way and with a similar record, as that made in the companion case referred to above, except as to the number of supplementary assessments made in District No. 6 and the record showing made of the fact of actual

hearing upon exceptions filed. Respondent Criddle filed his exceptions, as did certain other landowners. He now insists that he was not given a hearing thereon. The final order made June 17, 1918, in which the petition and remonstrances were heard, as well as the reports of the engineer, recited in the beginning: ". . . And the court having heard the evidence offered, and having seen and examined the report of said engineer filed herein as aforesaid, and having seen, heard and examined the objections and exceptions filed by E. T. Criddle and others, and having heard the evidence thereon, and having heard the argument of counsel, and being fully advised of and concerning the premises, doth find as follows. . . ." The benefits, in the sum of $794,515.94, were levied and assessed against the lands in the district originally assessed for the construction of the ditches and other improvements therein and ordered to be divided, and was divided, pro rata according to the original assessment of benefits against said lands. By order of July 22, 1918, the court attended to the details of proration and payment by installments and for the issuance of bonds for a total of $600,000. By order of April 28, 1922, the court determined it was necessary, in order to complete the work last aforesaid, to levy and assess an additional sum of $170,744.49 upon the lands in the district and to issue additional bonds in the amount of $250,000. Assessment was made and prorated and bonds issued and sold as in the first instance in the recleaning proceeding. On December 3, 1923, for like reason the court ordered an additional levy and tax of $35,232.99 and $30,-000 bonds; on January 22, 1925, ordered an additional levy and tax of $27,616.04 and bonds in the amount of $25,000. With the proceeds of said four bond issues the work of enlarging, cleaning out, removing obstructions and providing outlets was completed.

The major portion of the first recleaning bond issue of $600,000 and the levy and assessment made at the same time, has been paid.

■ The need here is to consider but two points. One of them was decided in the case of General American Life Insurance Co., supra, but is approached by counsel in this case from a different point of view from that of counsel in the other case. The first of these points is "that the supplementary levies in question, being levies started in proceedings under said recleaning statutes, are void because said statutes contain no provision for the making of such levies; that additional levies cannot be made in the absence of a statute expressly authorizing them to be made." Cited in support are State ex rel. v. Redman, 270 Mo. 465, 194 S. W. 260; State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 27 S. W. (2d) l. c. 3; Keane v. Strodtman, 323 Mo. 161, 18 S. W. (2d) 896; State ex rel. American Asphalt Roof Corp. v. Trimble, 44 S. W. (2d) 1103. These cases are not in point. They relate to a different power and form of taxation. The power to levy assessment upon the lands in question is not to

be understood as a power to tax in the ordinary meaning of that term. [Egyptian Levee Co. v. Hardin, 27 Mo. 495; Columbia Bottom Levee Co. v. Meier, 39 Mo. 53, 57.] For the reason stated and for those contained in the opinion in said General American Life Insurance Company's case we rule this contention against the respondent.

■ The second point referred to above is predicated upon a plea of arbitrary action, violative of the property, equality and due process clauses of the Constitutions, State and Federal, which were under consideration in the companion case. The substance of this plea is that "none of said work (enlarging, recleaning, etc.) benefited the lands of respondent Criddle; that said Sections 5613 and 5614 (set out in the other case) violate said constitutional provisions, constituting an arbitrary abuse of power, because said sections require the tax provided for therein to be proportioned against the lands according to benefits accrued thereto from other work than that provided for in said sections, thereby *not requiring said tax to be fairly and equitably apportioned against said lands according to the benefits to be derived from the new work,* if.any, and because said sections do not restrict the benefits issuing from said new work and prescribe no limitation on the amount of said tax."

The opinion in the companion case treats fully and disposes of all such matters as set out above, except possibly the question of equitable apportionment as viewed from respondents' standpoint. With respect to apportionment of benefits the respondents insist that the lands of Criddle actually received no benefit from the work for the payment of which the last three assessments and levies were made, and hence the taxes in suit, imposed therefor, were arbitrarily laid upon said land and are void. In the trial the respondents introduced Mr. Criddle and another who testified in effect 'that the Criddle lands were not benefited by the work done in the supplementary proceedings in question. To this evidence the appellant interposed appropriate objections without avail, and saved his exceptions. At the close of the trial the trial court, at the instance of the appellant, gave an instruction striking out that testimony.

We are of the opinion that the action of the trial court in eliminating such testimony was correct and proper. [Barnes v. Construction Co., 257 Mo. l. c. 196, 165 S. W. 723.] The fact that benefits were conferred on respondents' lands included within the borders of the drainage district, by the establishment of the district in the original proceeding, was completely determined thereby. [Mound City Land & Stock Co. v. Miller, 170 Mo. 240, 70 S. W. 721, and cases cited.] It is shown by the county court records above that the respondents had a hearing on exceptions filed in the enlarging and recleaning proceeding. The subsequent supplementary assessments were of the

same nature as those reviewed in the companion case, and are determined by the same principles of law. Nevertheless, we have examined and carefully considered all the authorities cited in respondents' brief. That the county court had jurisdiction of the subject matter and of the parties involved seems clear enough, and this collateral attack (State ex rel. Coleman v. Blair, 245 Mo. 680, 687, 151 S. W. 148) made upon said proceedings is limited to the question of arbitrariness in the action of said body—a question which has been fully considered in the opinion in the companion case, in which we held that the first assessment made in the original proceedings in which the district was established formed the basis for all the subsequent assessments.

For the reasons stated hereinabove, and those appearing in the opinion rendered in said companion case, the judgment in the case at bar is reversed and the cause remanded with directions to the circuit court to enter judgment upon the tax bills in suit for the taxes shown thereby, together with interest, penalties and costs, in the manner and form prescribed by law. All concur.