THE LITTLE RIVER DRAINAGE DISTRICT, a Public Corporation, v. A. O. FRIEDLEIN and MARTHA A. FRIEDLEIN, Appellants.—No. 37847.

THE LITTLE RIVER DRAINAGE DISTRICT, a Public Corporation, v. DALE B. PERKINS and BIRDIE PERKINS, Appellants.—No. 37848.—165 S. W. (2d) 396.

Division Two, September 8, 1942.

Rehearing Denied, November 12, 1942.

*R. Kip Briney, Giboney Houck* and *Rush H. Limbaugh* for appellants.

*R. B. Oliver, III,* and *Oliver & Oliver* for respondent.

 BOHLING, C.—Actions by the Little River Drainage District, a public corporation, (hereinafter designated District) for the

collection of delinquent drainage taxes for the year 1938.* The cases were tried to the court, a jury having been waived. They involve like legal issues, except that the answer of Dale B. Perkins and Birdie Perkins presented an additional issue, viz., that they ▮▮▮ had offered to pay that portion of the bonded indebtedness of the District chargeable against their lands at the time the refunding bonds, hereinafter mentioned, were issued. There was a stipulation for like judgments, unless, of course, the Perkins' case went off on the additional issue presented. The court entered judgment for the District in each case: for $921.11 and costs in the Perkins' case; for $486.40 and costs in the case against A. O. Friedlein and Martha A. Friedlein. The defendants perfected their respective appeals. They contend, among other things, the taxes may not be collected because the acts of the District contravened Federal and State constitutional provisions: the due process clause and the prohibition against taking private property for public use without just compensation. Defendants admitted they had not paid the District's taxes for the year 1938.

The Little River Drainage District was decreed a public corporation November 30, 1907 (Laws 1905, p. 190, consult, Chap. 79, Art. 1, R. S. 1939) for the reclamation of about 500,000 acres of land situate in Bollinger, Cape Girardeau, Scott, Stoddard, New Madrid, Dunklin, and Pemiscot counties. Little River Drainage Dist. v. St. Louis. M. & S. E. Rd. Co. (Banc), 236 Mo. 94, 103, 139 S. W. 330, 331.** On October 21, 1912, the court approved and confirmed the report of the Commissioners appointed to view the lands and assess the benefits and damages. This decree recited, among other things:

"(a) . . . it appears that the estimated cost of said improvements is the sum of $4,054,445.00, and the estimated damages are the sum of $162,886.00, and the estimated benefits are the sum of $14,148,-634.00."

We tabulate, for convenience, the material features here involved

*Other reported cases involving the collection of the District's annual installment taxes are: Little River Drainage Dist. v. Houck, 206 Mo. App. 283, 226 S. W. 72; Little River Drainage Dist. v. Jones, 234 Mo. App. 816, 136 S. W. (2d) 440 (the 1932, 1933, 1934, and 1935 taxes); Little River Drainage Dist. v. Houck, 235 Mo. App. 73, 137 S. W. (2d) 656 (the 1933, 1934, 1935, 1936, and 1937 taxes).

**Some of the other cases involving the early history of the District are: State ex rel. v. Riley (Banc), 203 Mo. 175, 101 S. W. 567, 12 L. R. A. (N. S.) 900; Little River Drainage Dist. v. Tomlinson (Banc), 245 Mo. 1, 149 S. W. 454; State ex rel. v. Sheppard (Banc), 245 Mo. 50, 149 S. W. 456; Houck v. Little River Drainage Dist. (Banc), 248 Mo. 373, 154 S. W. 739.

connected with the 1st, 2nd, 3rd, and 5th bond issues of the District:

| Year of Issue | Total Benefit Assess- ments | Bonds Issued | Int. Rate % | Levy on Assessed Benefits | | | |
|---|---|---|---|---|---|---|---|
| | | | | For Principal Amount | % | For Interest Amount | % |
| 1913 | $13,196,463 | $4,750,000 | 5½ | $5,584,753.96 | 42.32 | $3,652,770.00 | 27.68 |
| 1918 | 13,158,635 | 1,000,000 | 5½ | 1,100,061.88 | 8.36 | 939,526.54 | 7.14 |
| 1920 | 13,158,635 | 600,000 | 6 | 667,142.79 | 5.07 | 622,403.44 | 4.73 |
| 1921 | (This issue, insofar as shown of record, is explained hereinafter.) | | | | | | |
| 1924 | 13,099,413 | 4,000,000 | 6 | 5,763,741.72 | 44 | 5,239,765.20 | 40 |

The following statements are made in explanation. World War I was in progress prior to the 1918 issue. Construction costs increased, the proceeds of the first bond issue were found insufficient to complete the original plan for reclamation, and the 1918 and 1920 bond issues resulted. We quote the several statutory provisions infra under which bonds were issued. The total benefit assessments (estimated in the decree of October 21, 1912) is stated in different amounts in the resolutions adopted at different times authorizing the issuance of bonds. This resulted from proper causes; for instance, litigation, the taking over by the District of productive lands for improvements, retention basins, et cetera. The resolution adopted in 1924 authorized the issuance of $5,000,000 in bonds but only $4,000,000, principal amount, were actually executed, issued and negotiated. The total levies for principal and interest were made under Sec. 12340, R. S. 1939, hereinafter quoted.

Under proceedings instituted in 1917 and subsequently consummated additional lands in Stoddard and Bollinger counties were taken into the District. The court, in 1920, confirmed benefits assessed against said lands in the aggregate sum of $961,775. The supervisors authorized the issuance of $750,000, 6% bonds therefor in 1921, and levied against said assessed benefits a principal tax of $836,744.25 and an interest tax of $645,007. Defendants' lands are within the original boundaries of the District and the aforesaid levies for taxes incurred in connection with the extension of the boundaries constituted no part of the tax levies of 1913, 1918, 1920, or 1924 against defendants' lands.

The District defaulted in the payment of its bonds in 1929. Drainage and levee districts were authorized to refund outstanding bond issues and to avail themselves of ▮ Federal laws in respect thereto by Laws 1929, p. 180, Secs. 3 and 4; now R. S. 1939, Secs. 12611 and 12612, discussed hereinafter. Negotiations with the Reconstruction Finance Corporation, extending over some time, finally consummated in 1938 in the refunding of $8,018,000 outstanding bonds of the District, with the exception of about $50,000, principal amount, of bonds which could not be located. As of that time the assessed benefits of the original District stood at $12,931,584 and of the additional

lands subsequently taken into the District at $954,255; and the bonds issued and outstanding were:

| Year of Issue | Bonds Issued | Bonds Outstanding |
|---|---|---|
| 1913 | $4,750,000 | $1,918,500 |
| 1918 | 1,000,000 | 994,000 |
| 1920 | 600,000 | 597,500 |
| 1921 | 750,000 | 516,000 |
| 1924 | 4,000,000 | 3,992,000 |
| | $11,100,000 | $8,018,000 |

The District authorized the issuance of $7,216,500 in refunding bonds, said bonds to be in two separate series designated Series "A" and Series "B" and carrying corresponding numbers, bearing date of October 1, 1937, with interest coupons at the rate of 4%. The Series A bonds were to be in the aggregate amount of $2,405,500 and the Series B bonds in the aggregate amount of $4,811,000. The Series A bonds represented the amount of money made available for the acquisition of the $8,018,000 outstanding bonds, the bondholders receiving approximately thirty cents on the dollar. The Series B bonds were required by the Reconstruction Finance Corporation as additional security to become, we understand, obligations of the District upon and so long as default might exist in the payment of Series A bonds. Upon payment of the interest coupons and bonds of Series A at maturity, said Series A coupons and bonds and correspondingly numbered coupons and bonds of Series B are to be cancelled and delivered to the District.

Defendants' asserted constitutional issues, briefly stated, are:

1st. The action of the District in levying taxes (and issuing bonds, principal amount) insofar as they exceed the original estimated costs ($4,054,445) in the original decree of October 21, 1912, being had without notice to and opportunity for a hearing afforded defendants, constitutes a taking of property without due process of law.

2nd. The action of the District in making tax levies to pay bonds, principal and interest, "in excess of the total benefits fixed by the decree" of "October 21, 1912," constitutes a taking of property without just compensation and without due process of law.

3rd. The action of the District in taking in additional lands and charging a part of the costs of construction against defendants' lands, which were not within said extension, without a decree that defendants' lands were benefited was to the extent defendants' lands were assessed for the payment of the costs of said extension a taking of property without just compensation and without due process of law.

This refers to the situation existing subsequent to the refunding bond issue.

4th. The action of the District in not permitting defendants Perkins to pay their proportionate part of the refunding bond issue, when the District issued refunding bonds to refinance its outstanding bonded indebtedness, constitutes a taking of property without just compensation and without due process of law.

Defendants' contentions, insofar as they may involve an issue that the bond issues of 1918, 1920, and 1924 are invalid because had without any notice or an opportunity for a hearing in court afforded the landowners, has been ruled, we think, against defendants. It is not the point that the applicable statutory provisions were not followed or that the action of the District was arbitrary. State ex rel. Ross v. General Am. Life Ins. Co. (Banc), 336 Mo. 829, 842, 85 S. W. (2d) 68, 76[7, 8]; State ex rel. Ross v. Criddle (Banc), 336 Mo. 1229, 85 S. W. (2d) 77. In the former case, the court, among other things, said: "The question of the validity of the statutes authorizing supplementary assessments of benefits, as against the contention that such assessments were in contravention of the state and federal constitutional guarantees of rights of property and of due process of law, has been in judgment in this court and the federal Supreme Court time and again, and such statutes have uniformly been upheld. [Citing cases.]" See Rauch v. Himmelberger, 305 Mo. 70, 83[II], 264 S. W. 658, 661[2], sustaining the validity of the total tax levy had in connection with the District's 1924 bond issue against a like attack.

The decree of October 21, 1912, is abstracted in skeleton form. The sole references therein of record with respect to the costs and benefits are "that the estimated cost of said improvements is" $4,054,445 and "the estimated benefits are" $14,148,634. It did not "fix" the costs of construction at $4,054,445. The trouble with defendants' first contention is that the statutes establish the "benefits assessed," and not the "original estimated costs," as the limit of a district's authority to levy the taxes involved. The statutes have been so construed with respect to plaintiff District in McAnally v. Little River Drainage Dist. (Banc), 325 Mo. 348, 353, 4, 28 S. W. (2d) 650, 651; Rauch v. Himmelberger (Banc), 305 Mo. 70, 83, 264 S. W. 658, 660[1]; State ex rel. v. Little River Drainage Dist. (Banc), 334 Mo. 753, 762[3], 68 S. W. (2d) 671, 674[3]. We set out the applicable statutory provisions, which also bear on other contentions of defendants.

Section 12340, R. S. 1939, provides, in part, that "the board of supervisors shall . . . levy a tax of such portion of said benefits on all lands, railroad and other property in the district to which benefits have been assessed, as may be found necessary by the board of supervisors to pay the costs of the completion of the proposed

works and improvements as shown in said 'plan for reclamation' and in carrying out the objects of said district, and plus ten per cent of said total amount for emergencies. The *said tax* shall be apportioned to and *levied on each tract of land* or other property in said district *in proportion to the benefits assessed and not in excess thereof, and in case bonds are issued as provided herein and hereafter, then the amount of interest* (as estimated by said board of supervisors) which will accrue on such bonds *shall be included and added to said tax, but the interest to accrue* on account of the issuing of said bonds *shall not be construed as a part of the costs of construction in determining whether or not the expenses and costs* of making said improvements *are or are not equal to or in excess of the benefits assessed.*" Laws 1911, p. 213, Sec. 5519. The 1913 bonds were thus issued.

Under Sec. 12374, R. S. 1939, drainage districts were authorized when " 'the plan for reclamation' . . . is found insufficient to reclaim in whole or in part any or all of the land . . . to formulate new or amended plans"; and: "If it should be found at any time that the amount of total tax levied under the provisions of Sec. 12340 is insufficient to pay cost of works set out in 'the plan for reclamation' or additional work done under the provisions of this section the board of supervisors may make an additional levy to provide funds to complete the work: *Provided,* the total of all levies of such tax does not exceed the total amount of benefits assessed." Laws 1913, p. 260, Sec. 47. The District's resolutions authorizing the bond issues of $1,000,000 in 1918 and $600,000 in 1920 were under Sec. 12374.

Section 12350, R. S. 1939, under which the resolution covering the $4,000,000 in bonds issued in 1924 was adopted, authorized the board of supervisors of the District, whenever found necessary, "to enlarge or cause to be enlarged any ditches or other improvements set out in the plan for reclamation and to construct or cause to be constructed such additional ditches, levies, canals and other improvements that may be necessary to afford such lands substantially equal outlets for drainage and protection from overflow that are afforded the other lands in said district, equally taxed, as a whole"; and provided: "The cost of said additional ditches and improvements shall be paid for out of the benefits assessed against all the lands in said district as finally confirmed by the circuit court organizing said district, in the same proportion and in the same manner as is provided for in the constructing of ditches, levies and other improvements called for in the original plan for reclamation . . ." Laws 1923, p. 169. Authority is vested in the board of supervisors to issue bonds. Sec. 12369, R. S. 1939; Laws 1911, p. 219, Sec. 5525.

■ Defendants' second contention, that the District may not recover because the aggregate of all total levies, for principal and for interest, to pay bonds exceed the total of the benefits assessed is to be ruled against defendants because the levies for the payments of in-

terest here involved are excluded in determining whether the total levies for capital expenditures exceed the benefits assessed. Whether the large reduction in total levies and resulting saving in taxes to landowners under the refunding bond issue is of any consequence is not discussed, as the District seeks the defeat of the contention on the ground the total levies for interest are to be excluded. The tabulation hereinbefore set out shows aggregate total levies for principal of 99.75% and for interest of 79.55% of the assessed benefits. If either of the levies for interest on the 1918 bond issue (7.14%) or the 1920 bond issue (4.73%) be added to the aggregate total levies for principal (99.75%) the resulting sum exceeds one hundred per centum of the benefits assessed. The above factual situation existed with respect to these factors at the time of the decision in Rauch v. Himmelberger (Banc), 305 Mo. 70, 82[1], 264 S. W. 658, 661[1]. That case involved the validity of the District's total tax levy of 1924; for principal, 44%, and for interest, 40% of the assessed benefits. Court en banc explicitly stated: "The new tax levy will not exceed the benefits assessed." This statement could not properly have been made had the court considered that any one or more of the several levies of the District for interest were to be considered in determining whether the total tax levies exceeded the assessed benefits, for a consideration of the levies then existing for interest on the 1918 or the 1920 bond issues would have made the aggregate total tax levies for principal and interest in excess of the assessed benefits. The aggregate of all total tax levies, principal and interest, then was 179.30% of the assessed benefits against lands in the original District. An observation in State ex rel. v. Little River Drainage Dist. (Banc), 334 Mo. 753, 763, 68 S. W. (2d) 671, 675, viz.: "Let it be noted the quoted language* says the additional levies are to be made 'upon' (and therefore *within*) the benefit assessment, to pay principal and interest on *all bonds issued* . . .," may give countenance to defendants' contention so far as the levy for interest on the 1918 and 1920 bond issues are concerned. However that case was a proceeding in mandamus, instituted in 1932 at a time when the District was insolvent, to compel the District to pay bonds held by the relator out of funds in the District's treasury, sufficient therefor. Court en banc ruled the insolvent District held such funds for the pro rata benefit of all bondholders. We find statements therein of levies against the original District for principal of 99.73% and for interest of 79.5%, a total of 179.32% of the assessed benefits. The observation was made arguendo. As hereinbefore stated, the 1918 and 1920 bond issues were had under Sec. 12374, the total tax levies under Sec. 12340 having been found

---

*Referring to the following from now Sec. 12369, R. S. 1939: "In case the proceeds of the original tax levy made under the provisions of section 12340 of this article are not sufficient to pay the principal and interest of all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose . . ."

insufficient to complete the original "plan for reclamation," and not because the District's original tax levy was found insufficient "to pay the principal and interest of all bonds issued," as contemplated in Sec. 12369. This is not a ruling that drainage districts have inexhaustible powers to tax. The exclusion of interest on bonds in calculations to determine whether the total tax levies exceed the assessed benefits is within the expressed provisions of Sec. 12340, quoted supra, viz.: "and in case bonds are issued . . . the interest to accrue on account of the issuing of said bonds shall not be construed as a part of the costs of construction in determining whether or not the expenses and costs of making said improvements are or are not equal to or in excess of the benefits assessed." This is in accord with the basic principles of accounting that interest is not a capital expenditure. See also Little River Drainage Dist. v. Houck, 235 Mo. App. 73, 82, 137 S. W. (2d) 656, 662[8], reaching the same result. We have heretofore shown how the total assessed benefits legitimately varied as of the dates of the several bond issues. There is no showing that the initial benefits assessed against defendants' lands were ever changed. The aggregate total levies for principal were 99.75% of the assessed benefits against defendants' lands and not in excess of said benefits. The obligations of the District have been reduced by the refunding bond issue and a saving in taxes effected.

We find no direct proof of record to sustain defendants' third contention; i. e., that the taking of additional lands into the District resulted in charging defendants' lands, which were in the original District, with costs properly allocable to the added lands. Prior to the refunding bond issue, the record affirmatively shows all costs connected with extending the District's boundaries were charged against the lands added to the District. When the refunding bonds were issued, they were issued as bonds of the District and the tax levies were not allocated between the original and the added lands. From the statement in State ex rel. v. Little River Drainage Dist. (Banc), 334 Mo. 753, 758, 68 S. W. (2d) 671, 672, that the levies against the original lands for principal were 99.73% and for interest were 79.5% whereas the levies against the added lands for principal were 87% and for interest were 68% (less than the levies against the original lands), it is difficult to perceive how the owners of lands in the original District were hurt by treating all outstanding bonds as bonds of the District.

Section 12611, R. S. 1939 (Laws 1929, p. 180, Sec. 3), conferred broad authority upon the District to issue refunding bonds. Broader powers are apparently conferred under Sec. 12612, R. S. 1939 (Laws 1929, p. 182, Sec. 4) when a distict seeks to avail itself of the provisions of any act of Congress in refunding its bonded indebtedness. We quote Sec. 12612:

"All drainage and levee districts heretofore or that may be hereafter organized under any law of this state are hereby authorized and empowered to do each and every act necessary to be by them performed in order to comply with or avail themselves of the provisions of any legislation now enacted or that may be hereafter enacted by the congress of the United States of America, having for its purpose the refunding or extending the time of payment of the bonded indebtedness of any drainage or levee district or otherwise lightening the present burdens of taxation resting on the lands and property in such districts.''

The District's refinancing was in the interest of the landowners as well as the District. It effected, absent unforeseen events, a reduction in the District's outstanding bonded indebtedness from $8,018,000 and accrued interest to $2,405,500, and a reduction in the annual rate of interest from $5\frac{1}{2}\%$ and $6\%$ to $4\%$, with the exception of approximately $50,000, face amount, of original bonds that could not be located. If the Reconstruction Finance Corporation exacted certain requirements of the District, then, absent fraud or bad faith, Sec. 12612 does not contemplate that individual landowners, when their benefits, as well as the benefits of other landowners, far exceed any disadvantage incurred, may thwart the District's efforts on behalf of all. Landowners in the original District and landowners in the territory annexed now pay far less in taxes. The District Court of the United States for the Eastern District of Missouri had before it a somewhat similar issue in the unreported case of Dennison v. Little River Drainage Dist., Bliss, Intervenor. Judge Charles B. Faris delivered a memorandum oral opinion. The District, at the time, was considered insolvent and the refunding bonds had not been issued. Judge Faris treated the original lands and the added lands as a single integral district and the obligations of the District a unit. He mentioned that $219,800 of the $750,000 bond issue, authorized in connection with the annexation proceedings, were paid into the sinking fund of the District in an attempt at a "fair equalization.'' Defendants make no showing of injury.

The defendants Perkins assert that the District's refusal to permit them "to pay off their part of the reduced debt and insisting that they pay their unpaid portion of the original debt, is in violation of the Constitution.'' Provisions of Secs. 12378, 12611, and 12612, R. S. 1939, may bear on the issue, but it is unnecessary to set them out under our view of the facts involved. We understand negotiations for the refinancing of the District's bonded indebtedness continued for some time and were consummated on July 18, 1938. Under date of October 12, 1934, Mr. Perkins wrote the District stating he gave notice of his intention to pay off his indebtedness due the District. Under date of November 30, 1937, he again wrote the District advising that he desired to pay his indebtedness due the District on the basis

of the $2,405,500 in bonds to be issued to the Reconstruction Finance Corporation, plus approximately $50,000 of the original bonds not located, and receive a complete release and discharge of his lands. There is no showing that the Perkins within two weeks after the supervisors, by order, approved the refunding bond issue, paid or offered any payment for the release of their lands. See Sec. 12611. Thereafter, on September 23, 1938, the District offered to accept $6,477.78 and release Perkins' lands from the levies to be made under the ''refunding program.'' The exhibit shows a total of $11,603.59 to have been necessary for the same purpose under the bonds refunded. The Perkins' complaint seems to be that they were not permitted to secure a complete release of their lands by a payment based on the $2,405,500 Series A refunding bonds. This, in view of the Reconstruction Finance Corporation requiring $4,811,000 Series B bonds, to be held as security for the payment of the Series A bonds, the District was not in position to do. The point is ruled against defendants Perkins.

 We think defendants' position that the District may not recover because the tax bill failed to set out the several funds for which the taxes were to be collected and the amount due each fund is not well taken. They say the annual installment levies should have been broken down and the tax bill should have informed them what was being paid ''on the bonds issued in 1918, 1920, and 1924,'' with principal and interest stated separately. In addition to the tax bill, certified by the collector and filed with the petition, the District offered in evidence its drainage tax book for the year 1938. Section 12340, R. S. 1939, provides that the District, ''as soon as said total tax is levied, shall . . . prepare a list of all taxes levied, in the form of a well bound book . . .'' Section 12341, provides for a levy by the District of ''the amount of the annual installment of the total taxes levied'' under Sec. 12340; and Sec. 12370 provides for an annual maintenance tax. Said sections contemplate the certification of said annual tax levies in the District's annual drainage tax book and the transmission of the same to the respective county collectors. This constitutes the collector's authority to collect the tax. See also Sec. 12342. Defendants do not contend here that the District's drainage tax book for the year 1938 failed to comply with the above statutory provisions. Under Sec. 12346, it made a prima facie case for the District. Section 12342 does not make provision for the inclusion of additional information in the ''drainage back tax book,'' and we are directed to no statute requiring the collector to include additional information in certified delinquent drainage tax bills.

 In 1938 the board of supervisors levied an annual installment of the total taxes of 2.4 cents (Sec. 12340) and a maintenance tax of 1.4 cents (Sec. 12370) on the dollar of assessed benefits. Thereafter, in a resolution which recited that by reason of the depressed land

values and the lack of a market for cut over timbered lands, the owners thereof refused to pay special assessments thereon and a compromise with such owners and the acceptance of a lesser sum would produce a materially larger amount of drainage taxes than would otherwise result, the supervisors modified the resolution adopting the annual installment levy and authorized the acceptance of 25 cents an acre in payment of the annual tax originally levied against timbered lands. It was shown that like action had been taken annually since 1934. Defendants, who own cleared land, say this action of the supervisors was arbitrary and without authority in law and urge it to defeat the collection of the tax against their lands. Defendants do not attack the action of the supervisors in making the original annual installment levy. The attack goes to the subsequent attempt to modify said levy. If the later action be arbitrary, illegal, and a maladministration of the law, resulting in a disparity and discrimination between the taxpayers, an issue we do not rule, the taxpayers who were injured thereby may have had an appropriate remedy. It does not follow, however, that the collection of taxes, properly levied are to be defeated. The fault, if there be a fault, is not in the levy of the annual installment tax but in the action of the supervisors attempting to extend an allegedly unauthorized privilege to the owners of the timbered lands in the collection of the tax. In the circumstances, we think the remedy lies in striking at the allegedly illegal action of the supervisors and not in the defeat of actions to collect taxes lawfully levied and assessed. Would it do to hold that because officials charged with the collection of the state, county, school, and other taxes maladminister the law by extending an unauthorized and illegal privilege to some taxpayer or taxpayers all taxes of a like nature, although legally levied and assessed, are void and all taxpayers are privileged to defeat actions for the collection of their legitimate taxes? Here defendants, seeking the defeat of the collection of any tax, request more than an equal immunity in the asserted illegal violation and evasion of the law. They ask total absolution. What we have said legitimately discloses the vice in defendants' contention, assuming the later action of the supervisors to be unauthorized and illegal. In the nature of things lawful action generally should remain unaffected by illegal and void, and therefore ineffective, action subsequently attempted.

 Defendants say that action by the District in exacting a tax to establish a reserve fund is void, citing State ex rel. v. St. Louis-S. F. Rd. Co., 315 Mo. 430, 435(III), 286 S. W. 360, 362[4]. No point is made that the supervisors abused any discretionary authority existing in them in this respect. The record discloses that the Reconstruction Finance Corporation required the setting up of a reserve fund in connection with its refunding of the District's outstanding bonds,

and the action of the supervisors, so far as here attacked, may be justified under the broad provisions of Sec. 12612, quoted supra.

The judgments are affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.