GEORGE O. DALTON, COLLECTOR, APPELLANT, v. FABIUS RIVER DRAINAGE DISTRICT, A CORPORATION, RESPONDENT.—184 S. W. (2d) 776.

St. Louis Court of Appeals. Opinion filed January 9, 1945.

Respondent's Motion for Rehearing Overruled, Opinion filed, February 7, 1945.

Certiorari Denied by Supreme Court, March 5, 1945.

656

*Roy Hamlin* for appellant.

*John L. Plowman* and *Ben E. Hulse* for respondents.

McCULLEN, J.—This action was instituted in the Circuit Court of Marion County, Missouri, by the Collector of Revenue of said county, as plaintiff, against the Fabius River Drainage District, as defendant, to recover from defendant fees and commissions on taxes alleged to have been paid to the officers of said drainage district. A demurrer, filed by defendant, was sustained by the court as to each of the five counts of plaintiff's petition. Plaintiff saved his exceptions to the court's ruling and declined to plead further, whereupon the court entered final judgment against him and in favor of defendant. Plaintiff duly appealed.

In paragraph (1) of Count I of his amended petition plaintiff alleges that he is the duly elected, qualified and acting tax collector of Marion County, Missouri, and that defendant, Fabius River Drainage District, is incorporated under and by virtue of a *pro forma* decree of the circuit court of said county; that the bulk of the lands of said drainage are located in said county, outside of Mason and Miller Townships, and within the jurisdiction of said circuit court, and that defendant maintains its office and place of business in Hannibal, Mason Township, in said county.

In paragraph (2) of said Count I plaintiff states that under the laws of Missouri, he, as the tax collector of said county, is the only one authorized to collect the drainage taxes due each year on the lands in said drainage district, at the same time and place he collects other taxes as designated by law; that when said drainage district certifies tax books to him he is authorized by the laws of Missouri to collect said drainage taxes, and that he is entitled to a commission of one and three-fourths per cent on all said drainage taxes paid by the property owners on the property in said drainage district, and was at all times hereinafter mentioned entitled to such fees; that he is the only one authorized by law to collect and receive a fee for the collection of said drainage taxes.

Plaintiff avers in paragraph (3) of said Count I that at all the times mentioned in his amended petition defendant, by and through its officers, agents and employees, has persistently and continuously done each, all and everything it could to prevent him, as collector of said county, from collecting said drainage taxes, and has persistently, during the years mentioned in his amended petition, done each, all and everything it could do in getting said taxes from the various property owners in said drainage district and then keeping the collector's fees allowed only to the collector of said county; that defendant has purported to give a receipt, instead of the collector's official receipt,

for said money so collected, and has failed and refused, even though many times demanded by plaintiff, to pay to him the fees and money due him and authorized to be paid to him in his official capacity as collector of said county.

The amended petition, in paragraph (4) of Count I, states that for the year 1939 for said drainage district, the original taxes due, or original charges for drainage taxes, on the books of the collector for said district, was $9248.78, and of said sum plaintiff actually collected $733.50, and certified as delinquent, as the county collector to the drainage district secretary, the sum of $8515.28; that thereafter the drainage district secretary reported as collected by said secretary the sum of $5944.68, and certified as delinquent the sum of $2570.60, and that said drainage district retained plaintiff's one and three-fourths per cent commission on said sum of money, and has failed and refused to pay the same to plaintiff; that plaintiff, as collector of said county, is entitled to a commission of one and three-fourths per cent, as provided by law, on $5944.68, or a total commission of $104.10; that plaintiff has demanded of said drainage district said sum of money but said district has at all times refused to pay same. Plaintiff prays judgment on said first count in the sum of $104.10, together with interest thereon, and his costs.

In Counts II, III, and IV of the amended petition plaintiff adopts all of paragraphs 1, 2 and 3 of Count I and makes them a part of each of said Counts II, III and IV as though they were set out *verbatim*. Said Counts II, III, and IV deal with the amounts of drainage taxes collected and the fees alleged to be due plaintiff for the years 1940, 1941, and 1942, rsepectively.

In Count II plaintiff alleges that the drainage district secretary reported as collected by said secretary, as taxes for said drainage district for the year 1940, the sum of $3711.86, and that plaintiff, as collector, is entitled to a commission of one and three-fourths per cent, as provided by law, on said sum of $3711.86, or a total commission of $64.96, for which amount he prays judgment against defendant, with interest and costs.

In Count III plaintiff alleges that the drainage district secretary reported as collected by said secretary, as taxes for said drainage district for the year 1941, the sum of $4804.59, and that plaintiff, as collector, is entitled to a commission of one and three-fourths per cent, as provided by law, on said sum of $4804.59, or a total commission of $84.08, for which amount he prays judgment against defendant, with interest and costs.

In Count IV plaintiff alleges that for the year 1942, for said drainage district, the original taxes due, or original charges for drainage taxes, on the collector's books for said district, was $9239.62, of which sum plaintiff actually collected $1586.54, and certified as delinquent to the drainage district secretary the sum of $7653.08; that said secre-

tary has refused to report back to plaintiff, as collector of said county, the amount of delinquent taxes on said drainage district for the year 1942, but, upon information and belief, plaintiff states that said drainage district secretary has collected the sum of $5739.81, and that the sum of $1913.27 should have been certified by said drainage district secretary back to plaintiff, as collector of said county, as the amount of said drainage taxes delinquent for the year 1942; that said drainage district retained plaintiff's one and three-fourths per cent on said sum of money collected and has failed and refused to pay same to plaintiff; that plaintiff, as said collector, is entitled to a commission of one and three-fourths per cent, as provided by law, on $5739.81, or a total commission of $100.45, for which amount he prays judgment against defendant, with interest and costs.

In Count V of the amended petition plaintiff adopts all of paragraphs 1, 2 and 3 of Count I, and further alleges that:

"between this time and January 1, 1944, he, as collector of Marion County, Missouri, will be collecting state, county and drainage taxes in Marion County, Missouri, and that before this case can be finally determined the drainage taxes on the property in the drainage district mentioned, set out and described in this petition, will be due, payable and paid, and that defendant, by and through its officers, agents and employees are threatening to collect these drainage taxes due at this time and in the near future and before January 1, 1944.

"Plaintiff states that he has no other or further remedy at law to prevent and stop said defendant, and its officers, agents and employees, from interfering with the usual and ordinary collection of said drainage taxes on the property in said district and in Marion County, Missouri, and this plaintiff now asks this court to enjoin and restrain said defendant drainage district, its officers, agents and employees, from collecting the drainage taxes in said district, and the keeping and retaining of his fees, as collector of Marion County, Missouri, as made and provided by law.

"WHEREFORE, plaintiff prays that the defendant, its agents, officers and employees, be restrained from collecting or attempting to collect the drainage taxes assessed against all of the property and lands in said defendant drainage district, and for any and all other relief to which this plaintiff would be entitled, the premises considered."

The demurrer of defendant to plaintiff's amended petition was based on four grounds, as follows: (1) That the petition, and every count thereof, does not state facts sufficient to constitute a cause of action against defendant. (2) Because it appears on the face of the petition, and each and every count thereof, that the circuit court has no jurisdiction of the subject-matter of the action. (3) Because it appears on the face of the petition, and in each and every count thereof, that defendant cannot be sued in said court. (4) Because the 5th

count of the petition does not state facts sufficient to authorize the court to grant the equitable relief therein prayed.

Under the well known rule of pleading, defendant's demurrer admits the truth of all material facts that are well pleaded in plaintiff's petition and all inferences that may reasonably be drawn therefrom, but, of course, does not admit any conclusions of law stated therein. [Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S. W. 778; Bushman v. Barlow, 321 Mo. 1052, 15 S. W. (2d) 329.]

Looking to the provisions of Article 1 of Chapter 79, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, Article 1, Chapter 79, which contains the statutory law governing said drainage district, we find that Section 12340, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12340, provides for the levying of the drainage tax on the property in the district by the board of supervisors thereof, and that as soon as the total tax is levied the secretary of the board of supervisors shall prepare a list of all said taxes in the form of a well bound book indorsed and named ''drainage tax record of............drainage district...........''; that said indorsement shall be printed or written at the top of each page in said book and shall be signed and certified by the president and secretary of the board of supervisors, attested by the seal of the district, and that the book shall thereafter become a permanent record in the office of said secretary.

Section 12341, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12341, provides that the board of supervisors of the district shall determine, order and levy the amount of the annual installment of the total taxes levied under Section 12340 ''which shall become due and be collected during said year at the same time that state and county taxes are due and collected, which said annual installment and levy shall be evidenced and certified by the said board not later than September 1st of each year to the collector of revenue of each county in which lands and other property of said district are situate.'' Said section 12341 then provides that the certificate of said installment tax shall be in a form set forth therein and directed ''To——————— collector of the revenue'' of the county. The form then provides for a statement of the amount of the annual installment of the total tax levied under the provisions of Section 12340, *supra,* for the particular year. Section 12341 also provides that the certificate shall conclude with the following directions to the collector of revenue of the county:

''The said taxes shall be collectible and payable the present year at the same time that state and county taxes are due and collected, and you are directed and ordered to demand and collect the said taxes at the same time you demand and collect the state and county taxes due on the same lands and other property, and this 'drainage tax

book' shall be your warrant and authority for making such demand and collection.''

Provision is made in the certificate for insertion of the date and for the signatures of the President and Secretary of the district, as well as the seal thereof.

Said Section 12341 then provides, in connection with said certificate, for a table or schedule showing in properly ruled columns, first, the names of the owners of said lands and other property; second, the description of said lands and other property opposite the names of said owners; and, among other requirements, the following: ''fifth, a blank column in which the collector shall record the several amounts as collected by him; sixth, a blank column in which the collector shall record the date of payment of the different sums; seventh, a blank column in which the collector shall record the names of the person or persons paying the several amounts. . . .'' Said Section 12341 then concludes as follows: ''The said certificate and table shall be prepared in the form of a well bound book, which shall be indorsed and named 'drainage tax book, . . . . . . . . . .drainage district . . . . . . . . . . . . . .county, Missouri, for the year 19—,' which indorsement shall also be printed at the top of each page in said book.''

Section 12342, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12342, provides that it shall be the duty of the collector of revenue of each county in which lands or other property of any drainage district organized under Article 1 of Chapter 79, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, Article 1, Chapter 79, are situate, ''to receive the 'drainage tax book' each year, and he is hereby empowered and it shall be his duty to promptly and faithfully collect the tax therein set out and to exercise all due diligence in so doing. He is further directed and ordered to demand and collect such taxes at the same time that he demands and collects state and county taxes due on the same lands and other properties. . . . The above and foregoing 'drainage tax book' shall be the warrant and authority of the collector for making such demand and collection. The said collector shall make due return of all 'drainage tax books' each year to the secretary of the board of supervisors of the aforesaid drainage district, and shall pay over and account for all moneys collected thereon each year to the treasurer of said district at the same time when he pays over state and county taxes. Said collector shall in said 'drainage tax book' verify by affidavit his said return. The said secretary shall each year, within ten days after the return of said collector is delivered to him, prepare and certify to said collector a 'drainage back tax book' containing the list of lands and other property so returned by said collector as delinquent. . . .''

It is obvious from the foregoing statutes that the drainage district has no authority whatsoever to collect current installment drainage

taxes, but that the duty of collecting such taxes rests solely and exclusively on the collector of revenue of the county who must collect them in accordance with the lists in the "drainage tax book" which the drainage district is required by law to certify to the collector, "not later than September 1st of each year."

Our courts have held in numerous cases that the collector of revenue of a county has exclusive authority to collect current drainage taxes such as are involved in the case at bar. In Drainage District No. 1 v. Daudt, 74 Mo. App. 579, 585, the court, referring to the jurisdiction and duties of the board of supervisors, said:

"It thus appears that all the jurisdiction and all official concern the board of supervisors has or can have of the drainage tax is to make the levy and to draw warrants upon the funds of the district after they are collected. *With the tax collection, they have nothing to do. This is placed in the hands of the collector of the revenue of the county in which the lands to be benefited are situated.*" (Emphasis ours.)

Rulings to the same effect will be found in Elsberry Drainage Dist. v. Winkelmeyer, 278 Mo. 268, 212 S. W. 893; State ex rel. Mispagel v. Angert, 127 Mo. 456, 30 S. W. 118; and Little River Drainage Dist. v. Friedlein, 350 Mo. 218, 165 S. W. (2d) 396. It is true that the case of Drainage Dist. No. 1 v. Daudt, as well as Elsberry Drainage Dist. v. Winkelmeyer, and State ex rel. Mispagel v. Angert, *supra,* did not involve the drainage district statutes in the form in which they now appear in Article 1, Chapter 79, Revised Statutes Missouri, 1939, *supra,* nevertheless, we think the principle applied in those cases is applicable to this case under the statutes in their present form. In other words, the drainage district has no authority under the present statutes to collect current installment drainage taxes, just as such districts had no such authority at the time said cases were decided. It is now, as it was then, the collector's duty to collect such taxes.

There is a provision in Section 12378, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12378, whereby a taxpayer shall have the privilege of paying his total drainage tax assessment to the treasurer of the board of supervisors of the district "on or before a date to be fixed by the board of supervisors," and that, "the amount to be paid *shall be the full amount of the tax levied* less any amount added to meet interest." (Emphasis ours.) It will be observed that said section does not deal with current installment taxes and is not involved herein. We are concerned now only with the question of whether plaintiff's petition states a cause of action.

From the foregoing resume of the applicable statutes and the material facts pleaded in plaintiff's petition, it appears that the drainage district holds in its possession money representing fees which under the law rightfully belong to plaintiff and to which defendant has no legal or equitable claim. Defendant contends, however, that plaintiff is not entitled to such fees because he did not collect the taxes and there-

fore could not "retain" the fees; that since he did not perform the service of collecting the taxes, he is not entitled to any fees thereon. Defendant cites a number of cases to support its contention that statutes providing compensation for a public officer must be strictly construed, and that since the statutes involved herein provide for the collector's compensation in a particular mode and manner, the collector is confined to that mode and manner and is not entitled to any different mode of securing the compensation. The cases cited by defendant unquestionably do declare the principles stated, but we believe that they are not applicable to the case at bar. In this case plaintiff alleges that defendant, by its acts in collecting the taxes, prevented him from performing his duty of collecting the taxes. Defendant's demurrer admits these allegations, which, of course, means that defendant made it impossible for plaintiff to "retain" for his services the fee or commission authorized by law for that purpose. In the face of such admissions defendant now sets up its own conduct (unauthorized under the charges in the petition) as a reason why plaintiff did not and cannot plead that he collected the taxes in question, and, from that basis, argues that plaintiff is not entitled to any commission. We are unable to agree with defendant's view.

A very important public interest is involved in this situation—the interest of the taxpayers of the district. What should the collector do in this situation? Should he treat the collection of the tax and the giving of a receipt therefor by the drainage district as void and harass the taxpayers by bringing suits to compel them to pay the tax to him as the only one authorized to collect them? The answer is no. Such a course is neither reasonable nor necessary. The taxpayers made their payments to defendant undoubtedly in the honest belief that it had authority to collect such taxes and to give such receipts. The fact that defendant actually had no authority to do so should not prejudice the right of the taxpayers to stand discharged from further obligation to pay said current installment taxes. The fact that such drainage taxes, even when collected by the collector of the county, ultimately go into the treasury of the drainage district, and the further fact that the taxes involved in this case did go into the treasury of the drainage district, are good and sound reasons for applying in this case the doctrine of *de facto* public officer, and for holding the drainage district to be a *de factor* collector of revenue with respect to the taxes involved herein.

The rule in most states, including our own state, with respect to compensation for services performed by a public officer, is that such compensation is an incident to the office and belongs to the *de jure* officer, and he has the right, upon establishing his title to the office, to recover from the *de facto* officer whatever sums have been paid to that officer by way of salary, fees or emoluments, even though the latter

may have performed the duties of the office. [43 Am. Jur., sec. 386, p. 167.]

The last above named authority also states that:

"One who intrudes into or usurps a public office has no right to the salary or emoluments attached to the office, and as respects his right to retain as against the *de jure* officer any compensation paid to him for performing the duties of the office, he stands even in a less favorable position than an officer *de facto*. The rule that holds the latter liable to the *de jure* officer should and does apply with more strictness to one who has usurped the office, and in case the compensation or emoluments of the office are paid to him, *he becomes liable for them to the de jure officer in an action for money had and received.*" [43 Am. Jur., sec. 387, p. 168.] (Emphasis ours.)

The *de facto* doctrine has been invoked in many cases to protect the interests of the public in connection with the acts of persons exercising the duty of an officer without actually being one in strict point of law. The case at bar affords an example of the necessity for the application of that doctrine. It is said that the *de facto* doctrine "rests on the principle of protection to the interests of the public and third parties. . . . The law validates the acts of the *de facto* officers as to the public and third persons on the ground that, although not officers *de jure*, they are, in virtue of the particular circumstances, officers in fact whose acts public policy requires should be considered valid." [43 Am. Jur., sec. 470, p. 225.]

Under the facts pleaded, we hold that each of the first four counts of plaintiff's petition herein states a cause of action against defendant for money had and received to plaintiff's use.

In Henderson v. Koenig, 192 Mo. 690, 91 S. W. 88, which was an action for money had and received brought by a probate judge to recover fees allowed him by law which had been collected by a city, our Supreme Court held that although no express contract existed between the city and the probate judge, yet if the city collected the statutory fees pertaining to said office, it did so under an implied promise to account to the probate judge for so much thereof as it had received for his use.

Third National Bank of St. Louis v. St. Charles Savings Bank, 244 Mo. 554, 149 S. W. 495, also was an action for money had and received. The court held therein that such an action, although an action at law, is so favored by the courts and is so flexible in form and relief that it levies tribute indifferently on equitable as well as strictly legal principles.

In Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262, 94 S. W. 527, our Supreme Court held that the action for money had and received is one favored in the law; that the tendency is to widen its scope; and that it has become axiomatic that the action lies where a defendant has received or obtained possession of the money of a

plaintiff which in equity and good conscience he ought to pay over to the plaintiff.

To the same effect are the cases of Webster v. Sterling Finance Co., 351 Mo. 754, 173 S. W. (2d) 928, and Nodaway County v. Kidder, 344 Mo. 795, 129 S. W. (2d) 857.

State ex rel. Abington v. Reynolds, 280 Mo. 446, 218 S. W. 334, was begun as an action by the collector of revenue of Butler County against a prior incumbent of that office to recover fees allowed as compensation for performing the duties of collector of said county. It appears from the opinion in the case that Butler County, by an election in 1914, discontinued the township organization previously existing and that the Governor thereafter appointed relator to the office of collector but the county court declined to approve relator's bond solely on the ground that it, and not the Governor, had the right to appoint the collector. Thereafter, relator's title to the office was established by a judgment of the Supreme Court in *quo warranto* proceedings and his bond was approved. The Supreme Court held that in the action by the relator against the township collector, who collected funds after the township organization was discontinued, the relator was entitled to a judgment against said township collector for the fees withheld, and that the Court of Appeals, in ruling to the contrary, had contravened the opinion of the Supreme Court in State ex rel. Evans v. Gordon, 245 Mo. 12, loc. cit. 28 and 29, 149 S. W. 638. In the last-named case the Supreme Court held that it was settled law that compensation is an incident to the title to an office, and that it belongs to the *de jure* officer who may, upon establishing his title to the office, recover the fees of such office from a *de facto* officer who has received them. [State ex rel. Evans v. Gordon, *supra*.] The court also held in the Abington case, *supra*, that said rule should and does apply with more strictness to one who has usurped an office belonging to another and has received the fees of such office.

Grounds 1 and 2 of defendant's demurrer charge that it appears from the face of the petition that the Circuit Court of Marion County has no jurisdiction of the subject-matter of the action and that this defendant cannot and should not be sued in said court because the petition shows that defendant's office is in Mason Township in Marion County. In support of this contention defendant points to Section 2414, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 2414. By Section 2413 of the statute the Hannibal Court of Common Pleas is given exclusive original jurisdiction within the limits of said townships in all civil actions both in law and equity.

After providing that no person residing beyond the limits of said townships shall be sued in said Hannibal Court of Common Pleas, said Section 2414 provides "nor shall any person residing within the limits of said townships be sued in the Circuit Court for the county of Marion, except in cases where there are more defendants than one

in the county of Marion, some of whom reside within and some of whom reside without the limits of Mason and Miller Townships; in which event suit may be brought either in said Hannibal Court of Common Pleas or in the Circuit Court of Marion County, except as hereinafter provided.''

We are unable to agree with defendant's contention on this point. It is true that the Hannibal Court of Common Pleas has jurisdiction in law and equity in all civil actions within the limits of Mason and Miller Townships in Marion County, but we believe that the Legislature clearly intended to make an exception in cases involving a drainage district organized by and operating under the supervision of the Circuit Court. A mere reading of the various sections of Article 1, *supra*, shows that the Circuit Court is clothed with full and exclusive jurisdiction to organize a drainage district in the first instance. It also has full, exclusive and continuing authority to supervise and control many of the steps authorized to be taken by a drainage district in carrying out the provisions of the many sections of Article 1 of Chapter 79, *supra*.

In Section 12324, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12324, which authorizes the formation of drainage districts, it is provided that after the articles of association and petition have been signed by the landowners they shall be filed in the office of the Circuit Clerk of the County in which such lands and other property are situate, ''or, if such lands and other property be composed of tracts or parcels situate in two or more different counties then in the office of the Clerk of the Circuit Court of the county in which there are situate more of said lands and other property than in any other county.'' This section shows that the boundaries of a drainage district may not only cross township lines within a county, but may also cross the boundary lines of counties.

The provisions of Article 1, *supra*, taken together, show a complete and connected plan by the Legislature to give to the Circuit Court not only authority to organize such districts, but also to maintain continuing control over their actions during their existence, even in matters pertaining to lands lying outside the county in which the Circuit Court is located. Whatever authority was formerly vested in the Hannibal Court of Common Pleas within the two townships mentioned was taken away from that court to the extent of matters affecting a drainage district organized and operating under the supervision of the Circuit Court, and exclusive jurisdiction of such a district was given to the Circuit Court by Section 12325, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12325, in the following language:

''The Circuit Court of the County in which said articles of association have been filed shall thereafter maintain and have *original and exclusive jurisdiction* coextensive with the boundaries and limits of

said district without regard to county lines, *for all purposes of this article."* (Emphasis ours.)

Obviously included among the "purposes of this article" are the duties of the drainage district and of the collector of the revenue with respect to the levying and collecting of the current installment drainage taxes, as provided in said article.

In a case involving the authority of a drainage district to construct a bridge in a county other than that of its incorporation, but within the boundaries of the district, it was held that what is now Article 1 of Chapter 79, Revised Statutes Missouri, 1939, *supra,* dealing with drainage districts, is a code unto itself. "It fixes the rights and liabilities of all with respect to matters involved. It determines jurisdiction. It grants and withholds power and authority, accordingly as it may be provided therein. . . . Authority and duty are fixed, determined, and limited thereby." [State ex rel. Walker v. Drainage District, 228 Mo. App. 434, 446, 67 S. W. (2d) 840, 847. Citing Drainage Dist. No. 1 v. Daudt, *supra.*]

No doubt the Legislature in enacting Section 12325, *supra,* had in mind the jurisdiction given to the Hannibal Court of Common Pleas under Section 2414, *supra,* and for that reason used the emphatic and unequivocal language found in section 12325, *supra.* We hold that this suit was brought in the proper court.

Defendant points out that the statute, Section 12342, *supra,* provides that before receiving the drainage tax book the collector shall execute to the board of supervisors a bond in a sum equal to the probable amount of the tax collected by him and that nowhere in the petition is there any allegation that the collector gave such a bond. We think it is sufficient to say on this point that the petition alleged that plaintiff was the "duly elected, qualified and acting tax collector of Marion County." In view of Section 940, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 940, a party is not required to state evidence in his pleading. A pleader is required to state only the ultimate facts and it is not necessary to plead the facts or circumstances by which the ultimate facts will be established. [Sibert v. Litchfield & M. Ry. Co. (Mo.), 159 S. W. (2d) 612.] The ultimate fact pleaded in plaintiff's petition herein is that he is the duly "qualified" collector of Marion County. It was not necessary for plaintiff to plead the giving of a bond. The giving of a bond is merely evidence to prove the ultimate fact of qualification.

Defendant argues that the fifth count in the petition, which prays the court to enjoin the collection by defendant of the 1943 taxes, became moot for the reason that the cause was not submitted to the court until after the time for collecting said taxes had expired. The record shows that at the time the amended petition was filed, on October 23, 1943, the count was not moot. Although said count might have been more definite and certain with respect to defendant's acts, we cannot

say that it wholly failed to state a cause of action for equitable relief at the time it was filed. Whether the question involved in said count has since become moot is a matter of defense to be presented by defendant to the trial court.

Another contention of defendant is that the only authority for the collector's compensation is in Section 12344, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12344, which provides that the collector shall retain for his service one per centum of the amount he collects on current taxes and two per centum on delinquent taxes. Defendant asserts that there is no provision in Article 1, Chapter 79, under which the collector is entitled to one and three-fourths per centum on current taxes. We agree with defendant's view, but that point goes only to the amount of recovery and not to plaintiff's right of recovery.

A review of the allegations of the petition and of the statutes involved leads to the conclusion that the court erred in sustaining defendant's demurrer to the petition. The judgment is accordingly reversed and the cause remanded. *Hughes, P. J.,* and *Anderson, J.,* concur.

## ON MOTION FOR REHEARING.

McCULLEN, J.—In its motion for rehearing herein defendant argues that plaintiff's petition was fatally defective in failing to state specifically that he had given a bond as collector of drainage taxes and that it was not sufficient that he did plead that he had duly qualified as county collector; that until both of said conditions are complied with plaintiff has no right under the statute, Section 12342, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 12342, to collect the drainage taxes, and therefore no right to the fees he seeks to recover.

Plaintiff's petition not only pleaded that he was "the duly elected, qualified and acting tax collector of Marion County, Missouri," but also pleaded that under the laws of the State of Missouri he, as the tax collector of Marion County, Missouri, "is the only one authorized to collect the drainage taxes due each year on the lands in the above-mentioned drainage district at the same time and place he collects the other taxes as designated by law."

The allegations quoted show, as do Sections 12340, 12341 and 12342, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, sections 12340, 12341, and 12342, that plaintiff, as the collector of Marion County, is the only person who has authority to collect the drainage taxes in question. Therefore, when he alleged that he was the duly elected, qualified and acting collector of Marion County, we think that necessarily meant that he was qualified to perform all the duties incumbent upon the person holding that office, and it was not necessary for him to plead evidentiary facts by specifically alleg-

ing, in addition thereto, that he had given the statutory bond referred to. As stated in the opinion proper, evidence need not be pleaded. [Section 940, R. S. Mo. 1939, Mo. R. S. A., section 940.]

The motion for rehearing is overruled. *Hughes, P. J.,* and *Anderson, J.,* concur.