THE STATE ex rel. S. L. COLEMAN, Treasurer and ex officio Collector of Bates County, v. DEWITT C. BLAIR et al., Appellants.

**In Banc, November 14, 1912.**

1. **DRAINAGE DISTRICT: Legality of Organization: Collateral Attack.** A drainage district is a public corporation, and the legality of its organization cannot be inquired into in a collateral proceeding. So that where a land owner in the district is sued on a taxbill issued in pursuance of a levy of taxes to pay assessed benefits, it will not avail him as a defense to show that (1) only two of the three viewers appointed by the court to examine the lands sought to be drained reported in favor of the necessity, utility and practicability of the proposition, while the third made an adverse report, or (2) that the notice issued under Sec. 5581, R. S. 1909, was irregular and insufficient, or that said section is unconstitutional in that the notice prescribed by it is not due process of law.

2. **DUE PROCESS OF LAW: Notice by Publication: For Sufficient Length of Time: Great Distance from Court.** What constitutes due process of law is in a large measure governed by the particular facts of each case. No general rule can be laid down that will apply mechanically in all cases. Constructive service by publication will not be held invalid simply because defendant was so far away from the seat of the court that notice could not reach him in time to be effective. Where the statute provided that the notice to land owners of the date when they may be heard on the question of benefits to be assessed against their lands in the drainage district "shall be published in four issues of some weekly newspaper published in the county, the last insertion to be ·before the day set for the hearing," a notice so published is not in contravention of the constitutional provision forbidding the taking of property without due process of law, as to a land owner who lived in New Jersey.

3. ———: ———: ———: ———: **Until Fourth Insertion.** Where the statute provides that the notice "shall be published in four issues of some weekly newspaper published in the county, the last insertion to be *before* the day set for the hearing," it cannot be held that a publication so made was no notice at all until the fourth publication. Nor will it be held that because the last publication was made only four days before the hearing and defendant resided in New Jersey and a distance of thirty-six hours' travel from the seat of the court, he had only

four days' notice, and that the length of time between the notice and the hearing was not sufficient to constitute the notice due process of law.

4. **NOTICE BY PUBLICATION: Sufficiency.** When the law requires a notice to be published for a certain number of weeks or days before legal proceedings are had, a notice is sufficient if the last publication is made before the proceedings are to be had.

5. ————: ————: **Drainage District: Names of Land Owners or Interest.** Section 5587 of the law relating to the organization of drainage districts does not require the engineer or viewers or the county clerk to examine the deed records of the county to ascertain who are the record owners of the land to be assessed with benefits, and in their publication notice to name every person who such an examination may show owns an interest in the land; and the publication notice was not invalid as to a non-resident owner simply because he was not named therein when from an examination of the county records his name could have been ascertained.

6. ————: ————: **Wrong Newspaper.** A slight variation in the title of the newspaper in which the notice is directed by the court to be published, from its real name, will not invalidate the process. Where the notice of the assessment of benefits by the drainage district was directed by the court's order to be published in the "Western Enterprise," and it was published in the "Rich Hill Enterprise," and the evidence is that there was only one paper published in Rich Hill using the word "Enterprise" as a part of its name, and that it was sometimes designated by the public as the "Western Enterprise" and sometimes as the "Rich Hill Enterprise," the variation in the name of the paper was not sufficient to invalidate the notice.

7. ————: ————: ————: **To Heirs of Deceased Owner: Will of Record: Due Process of Law.** A notice by publication to the owners of land in the drainage district to be assessed with damages, directed among others, to the "Estate of John I. Blair" and "John I. Blair's Heirs," and not naming the nonresident defendant DeWitt C. Blair, whom the will of said John I. then recorded in the county showed to be the owner of the lands, was a sufficient notice to the said DeWitt under section 5587 of the drainage law, and was due process of law.

8. **DRAINAGE DISTRICT: Hearing Objections: At Adjourned Sitting of Court.** Under section 5615 of the drainage law, providing that "the terms 'regular session' and 'regular meeting,' of the county court, as used in this article, shall be *held* to include the regular session of such court commencing on the first Monday in February, May, August and November of each year,

as well as any adjourned term, provided for by the court when in session," an assessment of benefits made at an adjourned sitting of the court, on a date for hearing objections to the assessments fixed by the county clerk, was not invalid because the assessments were not made at "the next regular term," as required by section 5587 found in the same article. The language of said section 5615 does not in express language declare that wherever the words "next regular term" are used in said article they shall include adjourned or special sittings of the court, but they clearly imply that such was the legislative intent, and whatever the law will imply is as much a part of an enactment as if in terms inserted in it.

9. ————: **Suit on Taxbill: Attorney's Fee.** An attorney's fee of $1000 in a suit on taxbills for $16,000, levied to pay for benefits assessed by the drainage district, in which many issues were tendered to defeat the action, allowed by the court and taxed as costs, was not unreasonable and is approved.

Appeal from Vernon Circuit Court.—*Hon. Berry G. Thurman*, Judge.

Affirmed.

*John H. Lucas* and *Harvey C. Clark* for appellants.

(1) Appellant never having been notified of the proceedings until the bringing of this action to enforce the payment of taxes, necessarily the taxes sued for are void, and there can be no recovery. (a) The alleged preliminary notice was void as to appellant. R. S. 1909, Sec. 5581. The order of the court required same to be published in the Rich Hill Review. The finding was that it was published in the Mining Review. This did not confer jurisdiction over the appellant. R. S. 1909, Sec. 5581. (b) No opportunity for hearing as to qualifications of commissioners was afforded to appellant; nor objections as to sufficiency of petition given. (c) The appellant residing 1700 miles from the place of holding court could have no opportunity to appear in response to a notice published in an obscure newspaper on ten days' notice thereof. (d)

No authority existed in the county court to order notice on the report of only two members of the board of viewers.   (2) The notice required by the statute, R. S. 1909, Sec. 5587, was never given in compliance with the provisions thereof.   (a) The provision "the last insertion to be before the day set for hearing" is insufficient to constitute notice and renders the action obnoxious to the provisions of: Sec. 30, Art. 2, Constitution of Missouri; and Sec. 1, Art. 14, Constitution of United States.   Hunt v. Searcy, 167 Mo. 180; Hennig v. Staed, 138 Mo. 138; Stewart v. Young, 4 L. R. A. (N. S.) 169; Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; Roller v. Holly, 176 U. S. 398.   (b) The alleged notice is void, being in conflict with the provisions of section 5589, in that it is issued returnable not to the "next regular term," but to the same term of the county court.   R. S. 1909, Sec. 5587.   (c) The notice is void.   The title to the property in the name of the appellant was of record in the county of Bates. The statute requires "and also by name to all others whom it may in any manner be ascertained own such land."   R. S. 1909, Sec. 5587.   (d) The alleged service is void in that it wholly fails to comply with the provisions of the statute and is under the evidence herein not "due process" of law.   R. S. 1909, Secs. 5580, 5581; Chamberlain v. Blodgett, 96 Mo. 482; St. Louis v. Ranken, 96 Mo. 497; Schell v. Leland, 45 Mo. 289; Quigley v. Bank, 280 Mo. 289; Land Co. v. Cattle Co., 187 Mo. 420; R. S. 1909, Sec. 5587; Childs v. Morrow, 99 Mo. 638; Meyers v. McRay, 114 Mo. 377; State ex rel. v. Staley, 76 Mo. 15; Davis v. Montgomery, 205 Mo. 271; Feurt v. Caster, 174 Mo. 289; Miller v. Keaton, 236 Mo. 710; Trust Co. v. Railroad, 195 Mo. 688; Wall v. Lumber Co., 175 Mo. 411; Hinkle v. Lovelace, 204 Mo. 208; Proctor v. Nance, 220 Mo. 104.   (e) The service was void, the order of the court requiring the publication to be in the Western Enterprise and the publication being in the Rich Hill Enterprise.

*J. F. Smith* and *Thomas J. Smith* for respondent.

(1) The assessment bills or taxbills offered in evidence by the respondent proved prima facie that the amounts sued for were "just and correct." R. S. 1909, Secs. 5600, and 11498. (2) The prima facie case thus made was in no sense disproved by the evidence offered by the appellant with regard to the preliminary notice now called in question. (a) The appellant showed by the record that the court found as a fact that preliminary notice had been given as required by statute by publication in the Mining Review. R. S. 1909, Sec. 558. (b) No record was introduced or offered in evidence by appellant showing the court had ordered this notice to be published in the Rich Hill Review. The burden was upon appellant. R. S. 1909, Secs. 5600 and 11498. (c) Assuming that such record had been offered in evidence, the notice still was sufficient, since the evidence in the case shows without controversy that the names "Rich Hill Review" and "Mining Review" were used interchangeably and known by everybody in the county to refer to the same paper. (d) Appellant introduced only a small part of the record of the county court made in the matter of organizing the district and making the assessments sued for and has not shown that no other entries were made by the county court with regard to the publication of the preliminary notice. The burden as to this was upon appellant. (e) The notice published was in two successive weekly issues, the last more than ten days before the date of hearing, the first more than seventeen days prior thereto. Appellant could have come from his place of residence to the hearing within thirty-six hours. R. S. 1909, Sec. 5581. (f) The report of a majority of the viewers was sufficient. R. S. 1909, Sec. 8057, subdiv. 2. (3) The notice required by section 5587 was strictly in pursuance of the terms of that section. (a) It ran in the name of the State and was

directed to all parties shown by the report of the viewers to have real estate or to have any interest therein in the district and to all other persons owning real estate or having any interest therein in the district. (b) It gave a particular description in· lots not exceeding forty acres of all the lands in the district. (c) It was subscribed in his official capacity, accompanied by his official seal, by the clerk of the county court of Bates county. (d) It was published in the ·Western Enterprise, a weekly newspaper of general circulation in Bates county, for four successive issues, the last issue being prior to the date set for final hearing. (e) It gave to the appellant more than twenty-one days of notice of the time and place when the hearing was to be had, he being within thirty-six hours' travel of the place of hearing. (f) The report of the viewers· being filed prior to the first day of the February term of the court and having been set by the clerk for hearing on the first day of the term, the notice conformed strictly to the provisions of the statute. Secs. 8287, 8288, R. S. 1899,. as amended by Laws 1905, pp. 183, 184; R. S. 1909, Secs. 5587 and 5588. (g) The notice contained a sufficient designation of appellant as the heir of John I. Blair. Jarboe v. Hay, 122 Mo. 354; Hoover v. Smith, 96 Md. 393; 4 Words & Phrases, p. 3241, title, "Heirs." Appellant was an heir of John I. Blair. Besides, the statute is directory only. (h) It was the duty of the county clerk to select the newspaper meeting the statutory requirements in which the final notice should be published. · R. S. 1909, Secs. 5587 and 5588. (i) The clerk did select and cause the final notice to· be· published in the Western Enterprise, a weekly newspaper published in Bates county, for four successive issues, the last issue· being prior to the date of the hearing. (j) *Even if· the record of the county court as first written showed that the paper in which this notice was published was· the "Rich Hill Enterprise," that was simply a matter of recital which the court, while the

proceeding was pending, had full power at all times to correct. Besides, the power of the court to further proceed in the matter depended upon whether or not this notice was published in some newspaper meeting the statutory requirements, and such paper need not have been at all designated by the county court. (k) The designations "Western Enterprise" and "Rich Hill Enterprise" each refer to the same newspaper and by either name was equally known. (4) The law under which the assessment in this case was made is constitutional and does not by its terms deprive appellant of his property without due process of law. State ex rel. Applegate v. Taylor, 224 Mo. 383; State ex rel. v. Bugg, 224 Mo. 537; St. Louis v. Rankin, 96 Mo. 505; Davidson v. New Orleans, 96 U. S. 104; Windsor v. McVeigh, 93 U. S. 274; Huling v. Railroad, 130 U. S. 559. (5) The attorney's fee allowed in drainage assessment cases is provided by Sec. 5599, R. S. 1909, and not Sec. 11497.

BROWN, J.—Civil action in the circuit court of Bates county to collect drainage taxes in the sum of $2659.20. Plaintiff had judgment below, and defendants appeal.

Plaintiff's petition alleges the organization of Drainage District No. 1 in Bates county, Missouri, by the county court of that county of February 7, 1906, under the provisions of Art. 4, Ch. 122, R. S. 1899 (now Art. 4, Ch. 41, R. S. 1909).

The taxes sued for were levied by the county court in the year 1907, to pay bonds issued and sold to raise money to drain overflowed lands of defendants and other persons situated within said drainage district. These taxes remained unpaid on November 1, 1908, and this suit is to enforce the lien of said taxes against the lands of defendants.

Defendant Dewitt C. Blair filed a separate answer asserting ownership in himself of the lands de-

scribed in plaintiff's petition, and denying generally all other allegations therein. The other defendants filed no pleadings and made no defense. For the purpose of this opinion, Blair will be hereafter treated as the sole defendant.

The delinquent drainage taxbills upon which plaintiff's suit is based, were introduced in evidence. Whereupon, to overcome the prima facie case thus made by plaintiff, defendant assailed the incorporation of the drainage district, and attempted to prove the invalidity of the taxbills by introducing the records of the county court and the petition, reports, notices and other proceedings which resulted in the organization of said drainage district and the assessment of benefits against his lands.

I. The defendant contends that the judgment of the county court organizing and incorporating the drainage district is void because:

(1) Only two of the three viewers appointed by the court to examine the lands sought to be drained, reported in favor of the necessity, utility and practicability of the proposition, while the third viewer made an adverse report on said proposition; and

(2) Sec. 5581, R. S. 1909, is unconstitutional, in that the notice therein prescribed is not due process of law. Defendant also asserts that the notice issued under said last named section was irregular and insufficient in both form and substance.

Neither of the issues thus tendered can avail defendant in this action, because a drainage district is a public corporation, and the legality of its organization and the sufficiency of its corporate existence cannot be inquired into in this collateral action. [State v. Fuller, 96 Mo. 165; Catholic Church v. Tobbein, 82 Mo. 418; Burnham v. Rogers, 167 Mo. 17; School District v. Hodgin, 180 Mo. 70.]

II. It is further contended that the length of time prescribed by Sec. 5587, R. S. 1909, for the publication of notice to land owners of the date when they may be heard on the question of benefits assessed against their lands for the drainage of the same, is so short as to constitute the taking of property without due process of law, as prohibited by Sec. 30, Art. 2, Constitution of Missouri, and Sec. 1 of the Fourteenth Amendment to the Constitution of the United States.

Section 5587, supra, provides that notice to land owners of the application to incorporate a drainage district "shall be published in four issues of some weekly newspaper published in the county, the last insertion to be *before* the day set for the hearing."

From the phraseology of the statute quoted, it is evident that the last publication of the notice need not be on the last day before the day set for the hearing. Statutes of practically the same purport have been construed by this court to be complied with when the last insertion of the notice occurred ten days before the cause was set for hearing. [Robbins v. Boulware, 190 Mo. 33; Ratliff v. Magee, 165 Mo. 461.]

Thus it will be seen that the issue presented here is not alone whether section 5587, supra, is unconstitutional, but whether the notice as published and the judgment based thereon amounted to taking defendant's property without due process of law.

The hearing of objections by the land owners to the assessment of benefits against their lands was set for March 20, 1906, and the notice of said hearing was published in the Rich Hill Enterprise on February 16 and March 2, 9 and 16, 1906. Defendant Blair resided in the State of New Jersey, and the time required to make the trip from New Jersey to Bates county, Missouri, is thirty-six hours.

What constitutes due process of law is in a large measure governed by the particular facts of each case.

State ex rel. v. Blair.

No general rule can be laid down that will cover all cases.

The defendant cites and mainly relies upon Roller v. Holly, 176 U. S. 398, which was an action to enforce a vendor's lien against real estate in Texas owned by a party residing in the State of New Jersey. The statute of Texas prescribed five days' notice; and the process in that case was delivered personally to the defendant five days before the action was set for trial. The distance between the place of trial and the place of service was so great that it would have required four days continuous travel for defendant to have been present at the trial. The process so served was adjudged insufficient because not allowing the defendant a reasonable time to employ counsel and attend the trial; and therefore was held not to be due process of law.

It will be readily seen that the facts in this case are entirely unlike the facts in Roller v. Holly, supra. There, the clerk of the court issuing the process must have known that the defendant was so far away from the place of trial that he would need more than five days' time after service of process to go to Texas, employ counsel and prepare for his defense. The clerk knew where defendant lived; otherwise, he could not have forwarded the process to be served on him in New Jersey; while in the case at bar it does not appear that the clerk of the county court or the judges thereof had any knowledge of the whereabouts of defendant. It would certainly be a dangerous doctrine to announce that constructive service by publication in a newspaper might be rendered invalid because the defendant or other parties to be notified were so far away from the place where the court is sitting that the notice could not reach them in time to be effective.

In Wade on The Law of Notice (2 Ed.), Sec. 1029, it is said: "Publication is a means authorized by

245 Mo.—44

statute in most, if not all, the States of the Union, for obtaining constructive service of process, when from the non-residence, absence from the State, or absconding of the defendant, a more direct mode of service becomes impracticable. Service of summons in this manner is called *constructive,* not because the publication in the manner prescribed by statute raises any reasonable presumption that thereby the defendant is advised of the pendency of the suit, for its authorization is not confined to cases where there is even a possibility of its ever coming to the knowledge of the party to be affected. The defendant may have removed so far beyond the confines of civilization that it would be impossible in the nature of things for the paper containing the first insertion of the notice to reach him before the return day, and it will still be as effective as though the paper came regularly to his hands.''

Defendant proceeds on the theory that the notice which he complains of was no notice at all until it was inserted in the newspaper the fourth time. We do not think this proposition can be sustained upon authority or sound reason.

Undoubtedly the first, second and third publications of the notice performed some office. It is well known that no one person reads all the newspapers, and that whether or not a defendant will actually see a notice to him when published in a newspaper is a matter of chance. He would certainly be as likely to see the notice when published the first time as any subsequent publication.

The usual rule is that when the law requires a notice to be published for a certain number of weeks or days before legal proceedings are had, it is sufficient if the last insertion of the notice shall occur before such proceedings are had. [German Bank v. Stumpf, 73 Mo. 311; Drainage District v. Campbell, 154 Mo. 159; Harper v. Ely, 56 Ill. 179; Fry v. Bidwell, 74 Ill. 381.]

·Defendant's resourceful counsel has called our attention to many statutes of Missouri prescribing how service may be had by publication; but he omits Sec. 152, R. S. 1909, providing for publication of notice to creditors and others interested in proceedings to sell real estate of deceased persons to pay debts. That statute calls for a notice very much like the notice prescribed in the drainage law now in judgment.

To sell real estate through the probate court to pay debts it has never been deemed necessary to insert the notice of the proceeding in a newspaper more than twenty-eight days before the cause is set for hearing. If we were to adopt the rule for which the defendant contends it would probably invalidate a large number of the probate sales which have heretofore taken place in Missouri. [Young v. Downey, 145 Mo. 250.] We are not bound to follow prior decisions of this court if the law as announced therein be erroneous; but we usually follow our precedents when to do otherwise would disturb a large number of titles. [Cruzen v. Stephens, 123 Mo. 337, l. c. 346.]

Upon the authorities hereinbefore cited and for the reasons noted in paragraph V of this opinion, we overrule defendant's contention on this point.

III. Defendant contends that the notice as published fails to comply with sections 1770 and 1776 of our general code of civil procedure, citing Davis v. Montgomery, 205 Mo. 271, and many other cases defining the requirements of orders of publication under the foregoing sections.

It is manifest that the notice in judgment does not conform to the requirements of sections 1770 and 1776, supra; and this requires us to determine what kind of a notice is contemplated by Sec. 5587, R. S. 1909.

If Art. 4, Ch. 41, R. S. 1909, relating to the organization of drainage districts had simply required the notice under section 5587, supra, to be directed to the

owner of the land, then said section would have to be construed in the same manner as orders of publication intended to notify non-resident owners in ordinary suits to collect delinquent taxes (Sec. 11498, R. S. 1909). In other words, it would be necessary in organizing a drainage district to notify either the real or the record owners of lands situated in the district by their true names; or if their names were unknown, then it would be necessary to describe their interests or claims to such lands and how such claims or interests were derived.

However, we find that the drainage law does not require the same kind of notice as in ordinary suits to collect back taxes; and the sufficiency of the notice now under consideration must be tested by the provisions of the drainage law. [Ratliff v. Magee, 165 Mo. 465.] Section 5584, which provides for the appointment of a surveyor and three viewers to survey and estimate the expense of draining overflowed lands and to assess benefits against same, provides that said viewers shall in their report give "the name of the owner or owners of each tract of land and of any interest therein, so far as they are, by diligent effort, able to ascertain the same."

Section 5587, supra, provides that the clerk shall fix the time for hearing objections to the assessment of benefits assessed against the lands within the drainage district, and "shall thereupon issue, in the name of the State, a notice, directed, by name, to every person returned by the engineer and viewers as the owner of every lot or parcel of land affected by the proposed improvement or of any interest therein;" and also like notice by name to all other persons *"whom it may in any manner be ascertained* own such land, or any part thereof, or any interest therein;" and also notify generally "all other persons, without mentioning their names, who may own such land, or any part thereof, or any interest therein, notifying them of the general

object and nature of the petition, and report of the engineer and viewers, and that, on the day so fixed, the county court will hear said petition and report; and any evidence that may be adduced concerning the same.''

In construing this section, we must determine what is meant by requiring the notice to designate by name ''all persons whom it *may* in any manner be ascertained own such land.''

Do these words require the viewers to go to the deed records and there ascertain who owns the lands against which they have assessed benefits? We think not. It is evident that the framers of this drainage law thought it would seldom or rarely be applied in draining lands which were unimproved or which were owned by non-residents. By requiring the viewers and engineer to ascertain and return the names of the owners, it was contemplated that said viewers and engineer should find out who were the owners of the land by inquiry of the persons in possession thereof or other persons within the drainage district. Sec. 5583, R. S. 1909, provides that after the first notice is given of the intention to organize the district, persons opposed to such organization may file their remonstrances with the court, and where such remonstrances are filed, it would under this law, become the duty of the clerk to notify the remonstrators of the date fixed for hearing objections to the assessment of benefits.

The provision in section 5587, supra, that all other persons shall be notified of the petition and assessment of benefits, ''without mentioning their names,'' indicates that it was not the intention of the framers of this law to have the land records examined in order to ascertain who should be notified.

The word ''may'' is sometimes construed as mandatory, but more frequently otherwise. As used in the words of the statute last quoted it does not impose upon the clerk of the county court, the viewers, engi-

neer or any other persons connected with the proceeding, the duty of examining the land records to ascertain the names of persons who own the lands against which benefits have been assessed. This point is ruled against defendant.

The sufficiency of the notice of the hearing on the assessment of benefits is also attacked on three other grounds: (1) that the notice was not published in the newspaper designated by the county court; (2) that the defendant was not named in said notice as published; therefore, as to him, it was not due process of law; and (3) that the notice was not returnable to the next regular term of court after its issue.

IV. The order of the county court of Bates county, directing the publication of notice of the assessment of benefits, directed the clerk to insert said notice in the "Western Enterprise;" but it was in fact published in the "Rich Hill Enterprise." Oral evidence introduced by the plaintiff proves that there was only one newspaper published in the city of Rich Hill, Missouri, using the word "Enterprise" as a part of its name, and that it was sometimes designated by the public as the "Western Enterprise," and sometimes as the "Rich Hill Enterprise." This variance in the name of the paper is not sufficient to invalidate the notice.

Wade, in his treatise on the Law of Notice (2 Ed.), Sec. 1067, correctly announces the law on this point as follows:

"A slight variance in the title of the paper in which the notice is directed to be published, from that by which it is really known, will not vitiate the process, where it satisfactorily appears that the publication was in the one intended by the order. As where the order designated the 'Evening Day Book,' and the notice was published in the 'New York Day Book,' there being no evidence offered that there was any other pa-

per of the same or a similar name, to which the order could apply, this was held sufficient."

V.   The notice as published is directed to the estate of John I. Blair, John I. Blair's heirs and numerous other persons owning land in the drainage district, and further purports to notify "all other persons who own or have any interest in or to the following described real estate lying and being in the county of Bates and State of Missouri, followed by a description of all lands in the district, including those involved in this action."

Defendant earnestly insists that although the notice as published may have been in conformity with the drainage laws, nevertheless, it was not due process of law under the Federal Constitution, because the will of his father, John I. Blair, whereby defendant became invested with title to the lands sought to be subjected to the lien of the taxbills, was on record in Bates county before any steps were taken to organize the drainage district; and therefore the notice should have been directed to defendant by name, instead of to the estate or heirs of his father.

This contention is entirely unsound.   When a statute has required notice to be given in a certain form to absent land owners, such statute has almost universally been held to constitute due process of law.

Huling v. Kaw Valley Railway and Improvement Company, 130 U. S. 559, was a suit under a statute of Kansas governing the condemnation and appropriation of lands for railroad purposes.   That statute did not provide that the notice to absent land owners should designate them by name, but only required that such notice should give the numbers of the sections, townships and ranges through which the railroad would be constructed.   The Supreme Court of the United States, in upholding the constitutionality of the above mentioned statute, said:

"The owner of real estate, who is a non-resident of the State within which the property lies, cannot evade the duties and obligations which the law imposes upon him in regard to such property, by his absence from the State. Because he cannot be reached by some process of the courts of the State, which, of course, have no efficacy beyond their own borders, he cannot therefore hold his property exempt from the liabilities, duties, and obligations which the State has a right to impose upon such property; and in such cases some substituted form of notice has always been held to be a sufficient warning to the owner, of the proceedings which are being taken under the authority of the State to subject his property to those demands and obligations. Otherwise, the burdens of taxation, and the liability of such property to be taken under the power of eminent domain, would be useless in regard to a very large amount of property in every State of the Union. It is, therefore, the duty of the owner of real estate, who is a non-resident, to take measures that in some way he shall be represented when his property is called into requisition; and if he fails to do this, and fails to get notice by the ordinary publications which have usually been required in such cases, it is his misfortune, and he must abide the consequences. Such publication is 'due process of law' as applied to this class of cases."

See also Leigh v. Green, 193 U. S. 79, and Johnson v. Hunter, 127 Fed. 219.

VI.   This brings us to the further contention of defendant that the assessment of benefits against his land is invalid because the clerk of the county court fixed the date of hearing objections to said assessment of benefits at an adjourned sitting of said court instead of during "the next regular term" thereof, as required by Sec. 5587, R. S. 1909.

It is undoubtedly true, that where the law fixes a definite date on which a notice or other process shall be returnable, it cannot be made returnable at a different date. [Holladay v. Cooper, 3 Mo. 202.]

Section 5615 (Art. 4, Ch. 41, R. S. 1909, in which said section 5787, supra, is found) provides that:

"The terms 'regular session' and 'regular meeting,' of the county court, as used in this article, shall be held to include the regular session of such court commencing on the first Monday in February, May, August and November of each year, as well as any adjourned term, provided for by the court when in session."

It will be observed that said section 5615, supra, does not in express language declare that whenever the words "next regular term" are used in said Art. 4, supra, said words shall include adjourned or special sittings of the county court. However, the language quoted clearly implies that such was the legislative intent; and "whatsoever the law will imply is as much part and parcel of a legislative enactment as though in terms inserted therein." [State ex rel. v. Mason, 155 Mo. 500; Sutherland on Statutory Construction, Sec. 334.]

The county court acquired jurisdiction over the matter of assessing benefits against defendant's lands by *fixing a date for the hearing* and giving notice accordingly. Whether such hearing was at a regular or adjourned term did not affect the court's jurisdiction.

We are fully aware of the rule that statutes which permit courts to acquire jurisdiction by constructive service must be strictly construed. That is indeed a valuable rule, but should not be followed to a point which would force the courts to disregard their reason and common sense.

The notice met every requirement of the law under which it was issued and published.

VII.   Defendant also complains of the action of the trial court in allowing an attorney's fee in the sum of $1000 in favor of plaintiff and taxing same as costs in the case, as permitted by Sec. 5599, R. S. 1909.

The suit involved, directly and indirectly, the validity of taxes aggregating $16,000, and considering the number of issues tendered to defeat the plaintiff's action, we think not only the evidence introduced but the facts disclosed by the record warranted the court in allowing the sum of $1000 and taxing the same as an attorney's fee.

The judgment is affirmed.   All concur.