STATE OF MISSOURI, at the Information of STANLEY WALLACH, Prosecuting Attorney in and for the County of St. Louis, at the Relation of LESTER W. REINEKE, CHARLES W. DIEKROEGER, MRS. HOPE B. BAKER, W. DONALD DUBAIL, MRS. VIRGINIA M. FAWSETT and BURTON F. SAWYER, Relators-Appellants, v. CHARLES H. ZEIBIG, PERCY J. ORTHWEIN, HOWARD E. RIDGWAY, HENRY L. MEIER, GEORGE E. NIEDT and ADELBERT VON GONTARD, Respondents-Appellees, No. 43887—275 S. W. (2d) 353.

Court en Banc, February 14, 1955.

*Oliver J. Miller* for relators-appellants; *Lashly, Lashly & Miller* of counsel.

58

*Don O. Russell* and *Joseph Renard* for respondents-appellees; *Fordyce, Mayne, Hartman, Renard & Stribling* of counsel.

[353] HYDE, J.—Quo warranto to oust respondents from the offices of school directors of the School [354] District of the Village of Huntleigh, St. Louis County, which relators claim is not a legally organized school district. Relators are directors of Reorganized School District R-7 of Kirkwood, St. Louis County, and claim that part of the territory included in the new Huntleigh District belongs to and remains in District R-7. The trial court held the organization valid and dismissed the petition.

The question for decision is whether territory included in this reorganized enlarged school district under the authority of the 1948 School Reorganization Act (Laws 1947 II, p. 370; Secs. 165.657-165.-707, statutory references are to RSMo and V.A.M.S.) could later be made a part of a separate town or city district in accordance with the procedure set out in Sec. 165.263.

There was an agreed statement of facts and some additional testimony. Huntleigh became an incorporated village in 1929 and had a population of 180 in 1950. Prior to November 21, 1947, Huntleigh was completely included in Des Peres School District No. 45; but on that date, it enlarged its boundaries to include an area to the north known as Huntleigh Woods, which was in the School District of the City of Ladue. On October 29, 1949, District R-7 was established, which included the Des Peres District, so that all of the original part of Huntleigh (as it existed from 1929 to 1947) became a part of District R-7. However, the newly annexed part of Huntleigh remained in the Ladue District. On June 3, 1952, after the required notice, a meeting was held at which it was unanimously voted to organize all of Huntleigh into a separate town school district and respondents were elected directors. It is conceded that the organization procedure complied with all of the requirements of Secs. 165.263 and 165.267; the only question being whether territory properly taken into the re-

organized school district, established under the 1948 Act, could be taken out of it by the procedure provided in Sec. 165.263. Other facts shown by the record are that District R-7 had an assessed valuation of $32,055,800.00 of which $746,110.00 was in the area of Huntleigh included in it. The tax income of District R-7 in 1952 was about $1,250,000.00 of which amount its Huntleigh area paid approximately $30,000.00. The enumeration showed 32 school children in Huntleigh but only four attended schools in District R-7.

Sec. 165.263, paragraph 1, provides as follows: "1. Any common school district containing within its boundaries a city, town or village; the plat of which has been filed in the recorder's office of the county in which the same is situated, or any district having two hundred or more children of school age by the last enumeration, may be organized into a town or city school district, and, when so organized shall be a body corporate, and known as 'The School District of........,' and in that name may sue and be sued and possess the same corporate powers and be governed the same as other school districts except as herein provided; and every extension that has heretofore been made, or that hereafter may be made, of the limits of any city, town or village that is now or may be hereafter organized under the laws of this state, shall have the effect to extend the limits of such town or city school district to the same extent, and such extension of the limits of any city or town school district shall take effect on the first day of July next following the extension of the limits of such city, town or village, *except that such extension of the limits of any town or city, contained in a county of the first class shall not be affected by the provisions of this section;* provided, that any incorporated city, town or village having a population of three thousand or less, the plat of which has been previously filed·in the recorder's office of the county in which the same is situated, and which is divided by a school district boundary line, so that said incorporated city, town or village lies partly in one school district and partly in another, shall have the right to organize as a separate town or city school district in the manner provided in section 165.267." (Italicized portion added by amendment in 1947; Laws 1947 I, p. 510.)

The other paragraphs of Sec. 165.263 mainly concern the procedure to be followed in determining the question of whether to [355] organize a town or city school district. Different procedure is provided for towns and cities under 3000 population and for those over 3000 population, which are also authorized to organize separate districts under the same circumstances.

Appellants contend that this section should be construed to prevent taking any territory from an enlarged district reorganized under the 1948 Act, arguing that the whole section was intended to apply only to common school districts, which are mentioned in the first line of

paragraph 1, and that under the rule of ejusdem generis the proviso at the end of paragraph 1 should be construed to apply only to a city, town or village which is divided by a common school district boundary line. Respondents point out Sec. 165.707 (Sec. 15 of the 1948 School Reorganization Act) which provides: "Changes of boundary lines and disorganization of enlarged districts may be effected as now or hereafter provided by Sections 165.263 to 165.373." They say that this directly recognizes the method of taking all territory included in an incorporated city, town or village and making it into a separate town or city district, provided by Sec. 165.263, and specifically authorizes the use of this method to take such territory from an enlarged district, reorganized under the 1948 Act, to make a new town or city district. They also argue that the clear intent of the Legislature in enacting the proviso was to enable small incorporated communities to protect their civic, economic and social unity by always keeping the whole town in the same school district.

However, the italicised portion of Sec. 165.263, added by the 1947 amendment (Laws 1947 I, p. 510) has been overlooked. The addition of these words, "except that such extension of the limits of any town or city, contained in a county of the first class shall not be affected by the provisions of this section", to paragraph 1 of Sec. 165.263 was the only purpose of the 1947 amendment as shown by setting out these words in the title of the amending Act. While this clause is not as clear as it might be, it does plainly say that an extension of town limits ("that has heretofore been made or that hereafter may be made") in a county of the first class "shall not be affected by the provisions of this section." This undoubtedly means that, in first class counties, the extension of boundaries cannot have the effect they do in other counties to authorize keeping all of the town in the same school district. It certainly refers to all of the provisions of the section, because it was not limited to the provisions preceding this clause, and, therefore, would include the provisions of the proviso following this inserted clause. We think the effect of this amendment was to make inapplicable to St. Louis County (a county of the first class see Sec. 48.020; State on Inf. Taylor v. Kiburz, 357 Mo. 309, 208 S. W. (2d) 285) all provisions of Sec. 165.263 authorizing either the extension of existing school district boundaries by making an extension of town or city boundaries or the creation of a new town or city district when a town or city is divided by a school district boundary line by extension of its boundaries; and we so hold.

It may be noted that this amendment became effective September 10, 1947 (Laws 1947 I, p. 567) and that the extension of boundaries of Huntleigh was on November 21, 1947. Thus this amendment, making the provisions of Sec. 165.263 inapplicable to St. Louis County towns divided by school district lines, by extension of boundaries, was in effect before Huntleigh's boundaries were ever extended into

another school district. It appears from the record herein, as well as from what we judicially know, that there was good reason for such an amendment making these provisions inapplicable to counties of the first class. That is the enormous suburban population growth during the last decade, which has been particularly great in St. Louis County, bringing about the formation of many new incorporated cities, towns and villages and the extension of boundaries of many older ones. The evidence shows the incorporation of ten new towns since 1948 in St. Louis County. It also shows that many towns are divided by school district lines. It is apparent that chaotic conditions would result from the application of the provisions of Sec. 165.263 to this [356] situation to take territory from established districts after large investments had been made in new school buildings and teaching staffs built up for them. Undoubtedly, that is what the Legislature had in mind in making this amendment.

The judgment is reversed and the cause remanded with directions to enter judgment of ouster in accordance with the views herein expressed. All concur.