SCHOOL DISTRICT OF KIRKWOOD R–7
and School District of the City of
Ladue, Appellants,

v.

Charles H. ZEIBIG, Howard E. Ridgway,
Henry L. Meier, George E. Niedt, Adalbert
von Gontard, and Adolphus B. Orthwein,
James B. Orthwein and Mercantile Trust
Company, Executors Under the Will of
Percy J. Orthwein, Deceased, Respondents.

No. 45970.

Supreme Court of Missouri,

En Banc.

Nov. 10, 1958.

Oliver J. Miller, John L. Gilmore, Robert G. McClintock, St. Louis, for appellants.

Joseph Renard, Don O. Russell, St. Louis, for respondents, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, of counsel.

VAN OSDOL, Commissioner.

Plaintiffs, School District of Kirkwood R-7 (hereinafter sometimes referred to as "Kirkwood R-7") and School District of the City of Ladue (sometimes referred to as "District of Ladue") sought an accounting by defendants, who formerly were acting as directors of the School District of the Village of Huntleigh (sometimes referred to as "District of Huntleigh"), for monies coming into their hands by taxation and by allotment by state and county to the District of Huntleigh for school purposes in total amount $18,983.54. Defendants conceded, and the trial court found defendants should account for $8,195.20, which amount had remained in defendants' hands and was tendered and paid into the registry of the trial court; but the trial court allowed defendants credits for disbursements aggregating $10,788.34. Plaintiffs have appealed.

Here at the outset it is to be noted that the District of Huntleigh was illegally organized in 1952, and that its purported directors, defendants herein, were ousted by quo warranto proceedings culminating in the review and reversal of the circuit court's judgment for defendants by divisional opinion of this court subsequently adopted by this court en Banc, February 14, 1955. State on Inf. of Wallach ex rel. Reineke v. Zeibig, 365 Mo. 57, 275 S.W.2d 353. Prior to and after the attempted organization of the District of Huntleigh and until this court's final judgment ousting defendants, defendants had employed and advised with attorneys, and had employed them as counsel in the proceedings in quo warranto and other litigation noted infra, and ultimately paid attorneys' fees and other expenses of litigation out of the monies which had come into their hands through taxation of property of the area of the District of Huntleigh, and from other stated sources, for school purposes. Also defendants had reimbursed parents residing in Huntleigh for tuition paid by the parents for their childrens' attendance in schools maintained in the District of Ladue and Kirkwood R-7. The amounts of these fees and expenses of litigation and reimbursements for tuition aggregated $10,788.34, which disbursements, as stated, the trial court allowed defendants as credits in the accounting proceedings.

The question to be resolved is whether defendants are to be justified in making these disbursements, or should they be held as trustees to the use of these plaintiffs and required to account for the whole amount, $18,983.54, including the $10,788.34 in dispute.

We shall now endeavor to relate the background of this litigation, and shall state the facts of the organization of the District of Huntleigh and of defendants' administration of the District's affairs.

As noticed in the case of State on Inf. of Wallach ex rel. Reineke v. Zeibig, supra, 275 S.W.2d at page 354, the original Village of Huntleigh was, prior to November 21, 1947, in Des Peres School District

No. 45, but on that date the village enlarged its boundaries to include the area known at Huntleigh Woods, which area was in the District of Ladue. October 29, 1949, Kirkwood R–7 was established, which district included Des Peres District, so that all of the original area of the Village of Huntleigh became a part of Kirkwood R–7. However, the area of the newly annexed part of the Village of Huntleigh remained in the District of Ladue. We further note the stipulation of facts, filed in the instant case, indicating that the tax rate of Kirkwood R–7 for the years 1953 and 1954 was $4.05 per $100 assessed valuation; and that the tax rate in the District of Ladue for 1953 was $2.24, and for 1954 was $2.59 per $100 assessed valuation.

During the year 1950, counsel was engaged by several residents of the Village of Huntleigh, including some of these defendants, to give advice as to the procedure the villagers should follow to bring about the inclusion of the entire area encompassed in the extended limits of the Village of Huntleigh into the District of Ladue. It was the thought of the villagers that the division of the village by school district lines tended to destroy its unity— children of neighbors in the village attended different schools in different districts; the rate of school taxation was not uniform; and the economic and social interests and activities of the villagers and their children were more closely related to those of the residents of Ladue than to those of the residents of Kirkwood.

Counsel advised the villagers that two courses were open for them: the first as set forth in Section 165.170 RSMo 1949, V.A.M.S., requiring an election to be held by the districts involved, and also contemplating arbitration; the second was to organize a separate school district of Huntleigh under the provisions of Section 165.263 RSMo 1949, V.A.M.S., and to annex the newly organized separate district to the District of Ladue under the provisions of Section 165.300, RSMo 1949,

V.A.M.S. Upon instructions by the villagers, counsel took the required steps to call an election under Section 165.170, supra, with the result that Kirkwood voted against the proposal and Ladue voted in favor of it. The matter was then referred to arbitrators, according to the statutory provision. The arbitrators decided in favor of Kirkwood, thus maintaining the *status quo.*

The attorney for the villagers was of the opinion that the only course left open was the alternative stated supra, that is, the organization of an independent school district, comprising the territory of the Village, under the provisions of Section 165.263, supra, and the subsequent annexation of the new district to the Ladue District, under the provisions of Section 165.300, supra. During the latter part of 1951, the villagers sought the advice of additional counsel, an attorney who had recently become counsel for the Village of Huntleigh. Both of counsel were of the opinion that the statute (Section 165.263, supra) was clear in authorizing a village such as Huntleigh to organize as a separate school district, and that such organization would be a valid one. The villagers decided to proceed with the organization of an independent school district as a step to annexation to the District of Ladue.

The District of Huntleigh was purportedly organized June 3, 1952. But, on October 14, 1952, Kirkwood R–7 filed the quo warranto proceedings in the Circuit Court of St. Louis County, challenging the legality of the new District of Huntleigh, and on October 28, 1952, the District of Ladue intervened. January 17, 1953, the quo warranto case was tried, and April 3, 1953, the circuit court rendered judgment in favor of the respondents, defendants herein, and dismissed the petitions of relators and intervener. Kirkwood R–7, as relator in the quo warranto proceedings, filed a motion for a new trial and, after some procedural inadvertences and delay, an appeal to this court was perfected by

Kirkwood R–7. The District of Ladue did not appeal. The cause was argued here; and decided adversely to defendants-respondents by Division Number One; and, as stated, upon transfer, the divisional opinion was adopted by court en Banc, February 14, 1955. State on Inf. of Wallach ex rel. Reineke v. Zeibig, supra.

During the month of April, 1954, while the appeal from the judgment rendered in the quo warranto case was pending, the Board of Education of St. Louis County notified the secretary of the board of education of the District of Huntleigh that a plan had been formulated to consolidate the Huntleigh District with Kirkwood R–7. This plan was on the assumption that the District of Huntleigh was a de jure district. Nevertheless, an election was called in the District of Huntleigh to test the wishes of the voters with regard to a proposed annexation to the District of Ladue, which election was called for May 15, 1954. Whereupon, Kirkwood R–7 instituted an action for injunctive relief in the Circuit Court of St. Louis County averring, inter alia, that the defendant, the School District of the Village of Huntleigh of St. Louis County, "is a *de jure* school district of said County, although its status as such and of its Board of Education is disputed by these plaintiffs"; and a circuit judge entered an ex parte order restraining the election; but on May 14th, on the application of the District of Huntleigh, the St. Louis Court of Appeals issued its preliminary rule prohibiting the circuit judge from enforcing the restraining order.

The Board of Education of St. Louis County continued in its efforts to consolidate the Huntleigh District with Kirkwood R–7. It submitted successively two such plans of consolidation to the State Board of Education which declined to approve them. The county board, thereupon, on September 23, 1954, adopted its own plan and called for an election of the voters in the area; but the District of Huntleigh instituted an action for injunction against the county board to restrain such election. During the pendency of this latter action for an injunction, this court en Banc, February 14, 1955, as stated, adopted the divisional opinion rendered upon the appeal of the quo warranto case, and, consequently, the issues involved in the injunction case were moot.

We have examined the minutes of the Board of Education of the District of Huntleigh (comprised of defendants) reflecting the action of defendants at a special meeting October 28, 1952, in which meeting the question of attorneys' fees was discussed. It was pointed out that the board had no available funds, inasmuch as it could not impose any tax on the school district until the year 1953. According to the minutes of a meeting February 2, 1953, the president of the board stated that since there were no available funds for paying attorneys' fees until the taxes had been levied and collected, he proposed that the board borrow the amount necessary for the payment of attorneys' fees from the Village of Huntleigh, with an assurance by the board and the guarantee of certain individual members thereof that the same would be reimbursed to the Village in due course; and upon motion made, seconded, and carried, the president of the board was directed to borrow a stated sum from the Village, the obligation to be guaranteed by several individual members of the board. The minutes of a special meeting of April 20, 1953, disclose it was pointed out that a favorable decision of the Circuit Court of St. Louis County had been rendered in the quo warranto case, but it was remarked the matter was pending on appeal in the Supreme Court, and it was further observed that in the meantime it would be necessary to levy taxes to provide a teachers' fund which would be available for the payment of tuition of children who attended school in the Kirkwood and Ladue districts, "and also to defray the expenses of the litigation and

other expenses which the Board might be required to incur." And the board accordingly by motion levied a tax on the property within the district of $1 per $100 assessed valuation. The minutes of a special meeting of April 30, 1954, indicate the board's action in levying a tax for school purposes of 60 cents per $100 assessed valuation of property in the district.

No taxes were collected or other monies received by defendants as directors of the District of Huntleigh, and no incurred expenses were paid until the latter part of 1953, some months after the decision of the circuit court in favor of defendants-respondents in the quo warranto proceedings. However, during the years 1953 and 1954, and prior to the review by this court and the reversal of the circuit court's judgment in the quo warranto case, the directors-elect of the District of Huntleigh, defendants here, levied taxes as noted supra; received the District's share of the state teachers' fund, its apportionment of foreign insurance tax, and its share of railroad, telephone and telegraph taxes from St. Louis County; and, in 1953 and 1954, parents of Huntleigh who had paid tuition for their children who attended school in the District of Ladue and in Kirkwood R-7 were reimbursed, and defendants paid out of the monies the District had so received as aforesaid the attorneys' fees and other expenses they had incurred in their consultation with counsel and their engagement of counsel in the quo warranto and other litigation mentioned supra.

In examining the contentions made in the briefs of the parties to this appeal, we, as noted supra, have referred to the opinion and decision rendered by this court in the review upon appeal from the circuit court's judgment in the quo warranto case. We have seen that the organization of the area of a town or city, or of a village such as Huntleigh, situate within a county of the first class, as a school district is not authorized by law, the attempted organization being devoid of legality because of the exception clause, "except that such extension of the limits of any town or city, contained in a county of the first class shall not be affected by the provisions of this section." Section 165.263, supra.

■ Generally, a law under which a municipal corporation could be created is essential to its existence as a municipal corporation of whatever de jure or de facto status. In State ex rel. Consolidated Dist. No. 13, New Madrid County v. Smith, 337 Mo. 874, 86 S.W.2d 943, the relator district had existed and had functioned as a consolidated district for six years, and had been recognized as such by county and state officials. There was no law authorizing the creation of relator by a division of a town district. It followed that the attempt to organize the town district as a consolidated district was contrary to law and void. With respect to the contention that the district was a consolidated district de facto, it was restated that no law authorized the town district to incorporate as a consolidated district. Absent such a law the relator district would not be a consolidated district de facto.

We think the general principle governing the decision in the Smith case is to be recognized in our consideration of defendants-respondents' initial points that the District of Huntleigh was organized and existed and the acts of defendants were performed in good faith under color of law by virtue of *an existing statute which "apparently authorized" the organization of such district*; that the legality of the organization of which district under such statute was upheld by the circuit court; and that the existence of which district was recognized by county and state agencies and by the public; and that, consequently, the District of Huntleigh was a de facto school district, and defendants were de facto officers. These points and, in fact, the argument throughout defendants' brief are hinged up-

on the clause of the stated point containing the term "apparently authorized." But even if it were to be said, as defendants-respondents urge, that the statute (Section 160.263, supra) could be construed as authorizing the creation of a district such as Huntleigh in St. Louis County, a county of the first class, nevertheless, such a construction was erroneous. State on Inf. of Wallach ex rel. Reineke v. Zeibig, supra; State ex rel. Consolidated Dist. No. 13, New Madrid County v. Smith, supra. This is not to impute professional fault to able counsel, nor is it to impugn the personal integrity of defendants, who no doubt in good faith were advising and pursuing such erroneous theory.

The Smith case is in harmony with the general rule to the effect that in order to "constitute a de facto municipal corporation, *it is generally held necessary* and sufficient *that there shall exist a general law* or special charter *under which the corporation may be created,* formed, or organized, an attempt in good faith to incorporate or organize thereunder, and a subsequent actual user of the corporate franchise." (Our italics.) 62 C.J.S. Municipal Corporations § 30, pp. 106–107.

■ Since the District of Huntleigh had no existence de jure, it is readily held that defendants were not de jure officers. Consequently, defendants' acts as school directors were invalid. Nevertheless, defendants, in fact, had assumed and were purporting to act as school directors, and in Missouri the acts of those who have in fact acted as public officers have been upheld, although the officers for some reason were not legally invested with office. See the cases cited by defendants-respondents. Perkins v. Fielding, 119 Mo. 149, 24 S.W. 444, 27 S.W. 1100; City of Boonville ex rel. Cosgrove v. Stephens, 238 Mo. 339, 141 S.W. 1111; Fort Osage Drainage Dist. of Jackson County v. Jackson County, Mo. Sup., 275 S.W.2d 326; Adams v. Lindell, 5 Mo.App. 197, id., 72 Mo. 198; Simpson

v. McGonegal, 52 Mo.App. 540; Gray v. School Dist. No. 73 of Clay County, 224 Mo.App. 905, 28 S.W.2d 683.

■ Obviously, these cases are of the classes wherein it was necessary to validate the invalid acts of those who were illegally acting as officers by invoking the doctrine of de facto in the preservation of the rights of third persons or the interests of the public. Even where an office exists de jure and the acting officer is merely a de facto officer there is a violation of the law and, apart from the principle of validation, his acts are of no legal effect; but in the circumstances of some cases "the *de facto* principle is applied, and thus an otherwise void act is validated, not because of any character or quality attached to the so-called officer or to his office, but *because this is necessary to preserve the rights of third persons and keep up the organization of society.*" (Our italics.) Adams v. Lindell, supra. Hence, it frequently is said in effect that the doctrine of de facto has been ingrafted upon the law as a matter of policy and necessity to protect the interests of the public and of individuals involved in the official acts of persons exercising the duty of an officer without actually being one in strict point of law. Fort Osage Drainage Dist. of Jackson County v. Jackson County, supra, and cases therein cited, as well as the cases supra in the preceding paragraph; Mansur v. Morris, 355 Mo. 424, 196 S.W.2d 287; Dalton v. Fabius River Drainage Dist., 238 Mo.App. 655, 184 S.W.2d 776; Vol. 3, McQuillan, Municipal Corporations, 3rd Ed., §§ 12.102–12.106, pp. 376–387; 43 Am.Jur., Public Officers, § 470, p. 224.

In the instant case there is no incidence of any circumstance necessitating the protection of any third person who has acted upon defendants' apparent exercise of office, and the public has no interest in upholding the illegal acts of defendants at issue here, so there is no circumstance at all in this case compelling the recognition

of the validity of, or validating the questioned acts of defendants insofar as any third person or the public is concerned. In fact, the public policy of the state, with respect to its program of public education as promulgated by the acts of the Legislature involved here, was offended, and the administration of the public schools in St. Louis County, particularly the school-tax income of the districts of Ladue and Kirkwood, was adversely affected by the defendants in imposing the organization of a district and their acts in the administration of it, which district in law was non-existent.

█ In this case we are directly treating with defendants' responsibility for their own acts. We are examining the question of whether defendants should be held accountable for their acts in expending monies they had received from county and state and had illegally raised by the exercise of the taxing power of a school district in law non-existent. And in this case, where it is sought to require defendants to render an accounting for their acts in so expending monies so coming into their hands, and wherein there is no right of a third person or interest of the public requiring the application of the de facto doctrine, we have the opinion such expenditures could be justified only by demonstrating defendants' de jure status, which demonstration, of course, is impossible in the circumstances of this case.

Now, defendants assumed to act as directors, and they were bound to know whether they were legally qualified as such, and surely must have acted at their peril. 43 Am.Jur., Public Officers, § 494, pp. 240–241. And here we express the opinion that cases cited by defendants-respondents, of which Bobb v. Taylor, Mo.Sup., 193 S.W. 800, is an example, wherein it was said that judgments from which appeals were taken, without supersedeas, were, until reversed, res judicata between the parties as to issues therein determined, are of no interest to us here.

The legality of the organization of the District of Huntleigh was questioned by plaintiffs herein as relators in the quo warranto case which was appealed, and we do not hesitate to say that defendants, during the pendency of the appeal, were acting at the risk of this court's reversal of the judgment in the quo warranto case. Neither is this a case wherein there is an attempt to inquire into the legality of the organization of a public corporation in a collateral proceeding as in State ex rel. Coleman v. Blair, 245 Mo. 680, 151 S.W. 148, and in other cases cited by defendants-respondents.

Of course, we suppose that officers of a (de jure) school district may in given circumstances exercise an implied power to employ counsel to advise, and to institute or defend actions in a district's behalf. See Thompson v. School Dist. No. 4, 71 Mo. 495, cited by defendants-respondents. See also Bonsack & Pearce v. School Dist. of Marceline, 226 Mo.App. 1238, 49 S.W. 2d 1085, in which case it was recognized a school district through its board had the implied power to engage the services of architects in contemplation of public school improvements.

█ We have the opinion the trial court's disallowance of the amounts expended by defendants for attorneys' fees and expenses of litigation was erroneous; and, as to the items paid out in reimbursement to parents for tuition paid by them to other districts, we say that a district legally constituted is not authorized to make such disbursements except in cases where the facts show the application of, and upon shown compliance with Sections 165.013 and 165.137 RSMo 1949, V.A.M.S. And whatever conversations of counsel for the parties, including counsel for plaintiffs, in which defendants' reimbursements of tuition were tacitly agreed to or sanctioned could not validate the invalidity of the reimbursements not authorized by law. See and compare Cape Girardeau School

Dist. No. 63 of Cape Girardeau County **v.** Frye, Mo.App., 225 S.W.2d 484.

With respect to the contention of defendants-respondents that plaintiffs-appellants "cannot invoke equity in view of their lack of diligence and their recognition of the legal entity of the Huntleigh District during the period involved," we see that this contention is based on an inadvertence of counsel for Kirkwood R–7 in taking an appeal in the quo warranto case before the circuit court had overruled Kirkwood's motion for a new trial, thus rendering it necessary that a new appeal be taken after the circuit court overruled the motion, and some ensuing delay in the exchange of briefs, as required by this court's rule, because of which it was necessary to continue the quo warranto case pending on appeal to a subsequent term of this court. Defendants-respondents say that had it not been for the delay this court would have ruled in the review of the judgment in the quo warranto case, and the taxes for 1954 would not have been levied and additional expenses incurred by the Huntleigh board in resisting the efforts of the Board of Education of St. Louis County to consolidate Huntleigh with Kirkwood. It is further said Kirkwood fully recognized Huntleigh's existence and entity as a de jure district in recognition of the circuit court's judgment in the quo warranto case, as well as in the injunction litigation; and that, upon dismissal of the pending prohibition and injunction proceedings, after this court en Banc had decided the quo warranto case, plaintiffs joined in stipulating that the District of Huntleigh "would *cease to exist* upon the filing of the Supreme Court mandate in this Court." (Our italics.) It is argued that this position in recognition of Huntleigh's de jure status as existing was wholly inconsistent with Kirkwood's position in the quo warranto case. We have quoted supra from Kirkwood's petition filed in its action for injunction that defendant District of Huntleigh "is a *de jure* school district of said County, although its status as such and of its Board of Education is disputed by these plaintiffs."

We cannot follow defendants-respondents' argument that Kirkwood cannot seek equitable relief because of the mere inadvertence and delay of the appeal, or because of Kirkwood's position in acting to protect itself in a situation when confronted by some apparent de jure status of the School District of Huntleigh brought about by the erroneous and illegal action of defendants; and, of course, all the while Kirkwood was disputing such de jure status in the quo warranto case. These contentions are ruled adversely to defendants-respondents.

The trial court's judgment should be reversed, and the cause should be remanded with directions to enter a decree and judgment for plaintiffs requiring defendants to account for and pay the whole aggregate amount of $18,983.54 and costs, the part of such aggregate amount which had been raised by taxation to be apportioned between plaintiffs as if it were a school-tax yield for the years 1953 and 1954 based on the respective school-tax rates for those years on the respective valuations in those years of property in those respective parts of the Village of Huntleigh lying in Kirkwood R–7 and District of Ladue; and the parts of such aggregate amount which were allotted by county and state for those years to be divided between plaintiffs as they would have been allotted to the respective plaintiffs had there been no imposition of a District of Huntleigh.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court en Banc.

All concur.